**Ronald W. McCOY, Appellant,**

v.

**SPELMAN MEMORIAL HOSPITAL and Eugene Meyer, Respondents.**

**No. WD 45840.**

Missouri Court of Appeals,
Western District.

Jan. 26, 1993.

Alvin D. Shapiro, Kansas City, for appellant.

Jerome Brant, Kett Craven, Liberty, for Spelman Hosp.

Laurence Tucker, Melody Nashan, Kansas City, for Meyer.

Before BRECKENRIDGE, P.J., and SHANGLER and SPINDEN, JJ.

SPINDEN, Judge.

Ronald W. McCoy sued Spelman Memorial Hospital and its chief executive officer and administrator, Gene Meyer, for firing him—he alleges they breached an employment contract—and he complains that they fraudulently induced him to take a job in the first place. The trial court granted summary judgment in favor of Spelman and Meyer. McCoy appeals, and we affirm.

During 1988, McCoy lived in Attica, Kansas, with his family. He was looking for a better job when he found Spelman's advertisement for an assistant hospital administrator. After a telephone interview with Alan Abramovitz, Spelman's personnel di-

rector, McCoy was invited to interview with Spelman's board of directors and with Meyer. At the end of these interviews, McCoy understood that Spelman would offer him the position and that he would later receive written confirmation of the offer's terms.

On September 14, 1988, Meyer sent McCoy a letter which stated:

To reconfirm the *offer*,[1] it is as follows:
We will pay for the moving expenses.

. . . .

I would like you to pursue your Master's Degree at an area program. We will pay 100% tuition reimbursement.

Effective September 26 you will be eligible for all benefits.

A starting salary of $48,000 annually with reviews and eligibility for increases at 6 months, 12 months and annually thereafter.

. . . .

We will pay for the expenses of 3 trips, if necessary, in order for you to find housing. As you have agreed, it is necessary for you to live in the Smithville School District but not until you have found and arranged for permanent housing.

Vacation will be for 3 weeks a year after one year, however, we do allow for this to be taken earlier.

According to McCoy, the board asked him for a three to five year commitment, but the September 14 letter did not indicate a specific duration for employment.

McCoy accepted the offer and began work on September 26, 1988. Less than a year later, on March 8, 1989, before his family had moved to Smithville, he was terminated for allegedly inadequate management skills. On June 6, 1989, McCoy sued Spelman and Meyer for breach of contract, for fraudulently inducing him to accept the job, and for outrageous or extreme conduct resulting in emotional distress. On January 23, 1992, the trial court entered summary judgment in favor of Spelman and Meyer on all counts.[2]

In reviewing this summary judgment, we scrutinize the record in the light most favorable to McCoy and accord him the benefit of every doubt. *Kansas City v. W.R. Grace & Company*, 778 S.W.2d 264, 268 (Mo.App.1989). Summary judgment is proper only if no material fact is genuinely at issue, *Schwartz v. Lawson*, 797 S.W.2d 828, 832 (Mo.App.1990), and if no theory within the scope of the pleadings, depositions, admissions and affidavits filed would permit recovery and the moving party is entitled to a judgment as a matter of law. *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 244 (Mo. banc 1984); Rule 74.04. To overcome Spelman's and Meyer's motion for summary judgment, McCoy cannot "rest upon mere allegations or denials, but must set forth specific facts that demonstrate the existence of an outstanding genuine issue of material fact.... Mere doubt and speculation do not create a genuine issue of material fact." *Wilson v. Altruk Freight Systems, Inc.*, 820 S.W.2d 717, 720 (Mo. App.1991).

The trial court determined that no employment contract existed between McCoy and Spelman, and it entered summary judgment in favor of Spelman and Meyer on the breach of contract claim. McCoy asserts that the contract was oral—that the board's asking him for a three to five year commitment constituted an employment contract, and the agreement was memorialized by the September 14, 1988, offer letter. Spelman and Meyer argued to the trial court that an employment contract must be in writing to be enforceable—as required by the statute of frauds.[3] McCoy responds in this appeal that the statute of

1. We added the emphasis.

2. At oral argument on the motion for summary judgment, McCoy conceded that he had no claim against Meyer for breach of contract, and he abandoned that claim.

3. The statute of frauds, § 432.010, RSMo 1986, provides, "No action shall be brought ... upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized[.]"

frauds does not apply because of the doctrines of estoppel and part performance. Moreover, he argues that even if the statute of frauds did apply, the September 14 letter satisfied the statute because it constituted a "memorandum or note" of the oral agreement. We disagree on all counts.

To satisfy the statute of frauds, an employment contract—and its memorandum or note—must contain all essential terms, including duration of the employment relationship. *Campbell v. Sheraton Corporation of America*, 363 Mo. 688, 253 S.W.2d 106, 110 (1952); *Sales Service, Inc. v. Daewoo International (America) Corporation*, 770 S.W.2d 453, 456 (Mo.App. 1989). Without a statement of duration, an employment at will is created which is terminable at any time by either party with no liability for breach of contract. *Id.* at 456.

McCoy's argument that the September 14, 1988, letter constituted a memorandum of an oral contract fails because the letter does not state an essential element, duration. The letter did not state that Spelman was granting McCoy employment for any term—only that his salary would be reviewed at six months, twelve months and "annually thereafter." Moreover, the letter did not memorialize an agreement; it confirmed "the offer" which McCoy still had to accept.

To overcome the statute of frauds problem, McCoy argues that Spelman should be estopped from asserting the statute of frauds as a defense. He relies heavily on *Geisinger v. A & B Farms, Inc.*, 820 S.W.2d 96 (Mo.App.1991), which recognized that promissory estoppel, as set forth in *Restatement (Second) Contracts* §§ 90 and 139 (1981), can render the statute of frauds inapplicable.[4]

*Geisinger* concerned a land transaction, not an employment situation. More persuasive in this employment dispute are *Morsinkhoff v. De Luxe Laundry & Dry Cleaning Co.*, 344 S.W.2d 639 (Mo.App. 1961), and *Mayer v. King Cola Mid-Amer-*

*ica, Inc.*, 660 S.W.2d 746 (Mo.App.1983). In these cases the courts refused to recognize promissory estoppel arguments of employees attempting to establish terms of alleged oral employment agreements barred by the statute of frauds. As stated in *Morsinkhoff*:

> To allow recovery on the theory of promissory estoppel would abrogate the purpose and intent of the legislature in enacting the Statute of Frauds and would nullify its fundamental requirements. To allow recovery of damages for breach of an oral contract of employment for an indeterminate period, either before or after entry thereupon, would be to overrule a long line of decisions which hold exactly the opposite. In such a situation there is no mutuality of obligation. The employee may quit any time or never start performance and suffer no liability. If the employer is held liable, the amount and extent of damages poses a difficult question.... The damages resulting from loss of a promised employment which may be terminated one hour, one day or one week after it is begun, are, we think, so inconsequential as to be impossible of either admeasurement or allowance.

344 S.W.2d at 644–45. Indeed, the employer-employee relationship is one of agency rather than contract law and is, therefore, primarily consenual in nature. *See Restatement (Second) of Agency* § 2 (1958); James M. Crabtree, Note, *Illusory Rights: The Missouri Approach to Employment Contracts*, 57 Mo.L.Rev. 1019, 1021 (1992).

Even if this were not the case, McCoy's circumstance does not satisfy the elements of promissory estoppel: (1) a promise, (2) on which a party relies to his detriment, (3) in a way the promisor expected, or should have expected, (4) resulting in an injustice which only enforcement of the promise could cure. *Geisinger*, 820 S.W.2d at 98. McCoy merely had a personal expectation of three to five years of employment, not a promise.

4. The Geisinger court did not apply promissory estoppel because several factors which were required for its application were absent from the record.

McCoy then turns to the doctrine of part performance as eliminating his burden of satisfying the statute of frauds. As "a creature of equity, [part performance] has no application to an action at law for breach of contract." *Whaling v. Little Piney Oil Co.*, 623 S.W.2d 589, 592 (Mo. App.1981). Of more importance is McCoy's inability to show an employment contract; he has been unable to show anything more than employment at will.

McCoy next asserts the trial court erred in granting summary judgment as to the fraud claim against Spelman and Meyer because he presented evidence establishing genuine issues of material fact. McCoy's petition averred:

> Included among [the] false representations made to [McCoy] were ... reasons why [Spelman and Meyer] were hiring him and causing him to move to Smithville, saying they wanted him to work [as assistant administrator], when the truth was they were only bringing him in to afford leverage in respect to ... Meyer in continuing contractual problems and disputes with ... Meyer; [Spelman and Meyer] told [McCoy] they had nobody to step in and take charge, and they needed an assistant administrator to back up ... Meyer, when in truth they were bringing [McCoy] in only to prevent recurrence of a situation where ... Meyer had been able to force ... Spelman to renew his contract at a higher compensation; ... Meyer was aware of such actual facts and the falsity of the representations, being made to [McCoy], but acquiesced in them, and failed to disclose the truth to [McCoy] when he had a superior knowledge of the facts; in truth, he did not want [McCoy], yet represented to [McCoy] he wanted [Spelman] to employ him[.]

The court properly granted Spelman's and Meyer's summary judgment motions.

Considering the record in a light most favorable to McCoy, it establishes that, indeed, the board wanted to overcome Meyer's bargaining leverage over them, and that hiring McCoy as Meyer's assistant would accomplish that. It does not establish, however, that this was the board's "only" motive for hiring McCoy, as McCoy's petition alleges. In his own testimony, McCoy acknowledged that the board wanted to add an assistant administrator to the staff so they would have someone capable of managing the facility should something happen to Meyer or he should leave the hospital. McCoy does not establish that Spelman or Meyer did not want him to serve as a *bona fide* assistant administrator. They did want to hire him to function as assistant administrator, and they fired him because he was not, in their opinions, fulfilling his duties.

McCoy argues that although he could not establish an affirmative, false representation, he did establish that Spelman and Meyer concealed material facts from him—that they committed fraud by silence. He contends that they should have known that he would not have accepted the job had they told him that he was being hired to overcome Meyer's bargaining leverage with the board. McCoy also complains that Meyer did not inform him that he was not Meyer's first choice for the position.

Silence can constitute misrepresentation, but only when the complaining party labors under some misconception which the other party is under some duty to disclose and correct. *See e.g., Triggs v. Risinger*, 772 S.W.2d 381 (Mo.App.1989); *Alexander v. Johnson Furnace Co.*, 543 S.W.2d 539 (Mo.App.1976). As stated in *Alexander*:

> While silence or concealment becomes fraudulent only where there is a duty to speak and disclose, a legal duty to disclose may exist where there is no existing fiduciary relationship between the parties and where no special confidence is expressly reposed. The duty to disclose may arise from the circumstances of the case, including inequality of condition and the superior knowledge of one party, which knowledge is not within the fair and reasonable reach of the other party.... Whether or not a duty to disclose exists and whether or not the circumstances amount to fraud must be

determined on the facts of the particular case.

*Id.* at 542 (quoting *Jones v. Arnold,* 359 Mo. 161, 221 S.W.2d 187, 193 (1949)) (emphasis omitted).

■ We conclude, that as a matter of law, Spelman and Meyer had no duty to inform McCoy that one of its motives in hiring him was to overcome Meyer's bargaining leverage. Such information was in McCoy's fair and reasonable reach. All he had to do to learn the information he now asserts was crucial to his decision of whether to accept the job was to ask about the history of Meyer's relationship with the board during his job interviews. He would have either gleaned the details he now finds unacceptable or he would have obtained the affirmative misrepresentation missing from his case. The possibility of bad relations between Meyer and the board was obvious, as was the possibility that McCoy would find himself in crossfire. Assistants often find themselves in such crossfires. Surely, McCoy understood that as assistant administrator he was to serve as Meyer's backup and that a good relation with Meyer was important. Yet, the record indicates that McCoy made no efforts to ascertain what he now describes as crucial. Spelman and Meyer had no duty to call attention to such obvious subject matter—no more than McCoy had a duty to disclose to Spelman every negative aspect of his personality. McCoy's argument that he had inferior knowledge is disingenuous.

As to McCoy's complaint that Meyer failed to inform him that he was not Meyer's first choice, we ignore the materiality issue and note that the uncontroverted evidence before the trial court was that, after Meyer's initial reluctance to hire McCoy, McCoy became Meyer's choice in the end. Meyer's affidavit stated:

> ... Initially, Ronald McCoy was not my first choice for Assistant Administrator of Support Services. However, after discussion with members of Spelman Memorial Hospital's Board of Directors, I reconsidered my choice, acceded to the Board's wishes, and supported the hiring of Ronald McCoy.

We conclude that the trial court properly granted summary judgment against McCoy on his claim of fraud against Spelman and Meyer. Further, the trial court properly granted summary judgment against McCoy on his claim of breach of contract against Spelman.

All concur.