Loreen OLSON, Appellant,

v.

The CURATORS OF the UNIVERSITY OF MISSOURI and Michael O'Brien, in His Official and Individual Capacity, Respondents.

No. WD 74670.

Missouri Court of Appeals, Western District.

Oct. 23, 2012.

George Smith, Columbia, MO, for Appellant.

Paul Maguffee, Columbia, MO, for Respondents.

Before: JAMES EDWARD WELSH, C.J., THOMAS H. NEWTON, J., and FREDERICK P. TUCKER, Sp. J.

THOMAS H. NEWTON, Judge.

Ms. Loreen Olson appeals the partial summary judgment for the Curators of the University of Missouri (University) and Mr. Michael O'Brien, the Dean of the College of Arts and Sciences. Ms. Olson contends that the undisputed facts did not entitle the University to judgment as a matter of law. We reverse and remand.

## Factual and Procedural Background

Ms. Olson filed a six-count petition for damages against the University and Mr. O'Brien. Only Counts I through IV are at issue. In Counts I and II, Ms. Olson alleged that the University had breached a two-month employment agreement and a three-year employment agreement, respectively. In Count III, she alleged that the University had breached the covenant of good faith and fair dealing. In Count IV, she alleged promissory estoppel, requesting the trial court to enforce Mr. O'Brien's promise to appoint her the successor chair of the Department of Communications (Department) of the College of Arts and Sciences (College).

Ms. Olson alleged the following facts to support those counts. In March 2010, the faculty of the Department nominated Ms. Olson to be the successor chair. In April 2010, Ms. Olson and Mr. O'Brien met to discuss Ms. Olson's appointment as the chair. During the meeting, Ms. Olson was "formally offered the position" and she accepted the position in that meeting. They agreed that she would assume the current chair's position for two months during the summer before starting an official term of three years the following September. They also agreed that she would be paid $14,000 for those two months. They further agreed that she would be paid $77,000 in the first year of the official term. They left for future discussion "minor details regarding a chair stipend and research leave."

Ms. Olson further alleged that the agreements were "memorialized" in letters dated May 4. The first letter addressed the two-month term and stated that the terms found in the other letter would take effect September 1, 2010. The second letter mentioned the three-year term appointment, salary of $77,000 and research leave. After receiving the letters, Ms. Olson emailed Mr. O'Brien to address "outstanding issues" including the existence of a chair stipend, pay adjustment for July and August, the guidelines for spending the $5,000 research support, and payment for May and June. The next day, Mr. O'Brien's assistant emailed Ms. Olson that

Mr. O'Brien would be contacting the faculty to select another chair because of "irreconcilable differences." Another faculty member was appointed.

In its answer, the University denied the existence of any agreement for Ms. Olson to be the successor chair. It also raised the statute of frauds as an affirmative defense, claiming that the alleged oral agreement was not to be performed within a year and was not evidenced by a writing containing essential terms or the signature of an authorized person.

Subsequently, Ms. Olson moved for partial summary judgment on Counts I and II. Ms. Olson claimed that there was no genuine dispute of material fact that two contracts existed between her, Mr. O'Brien, and the University, and that they breached them. The University requested that the motion be denied because disputed facts existed. It alleged that no agreements were made at the meeting because the parties had an understanding that a written offer would be forthcoming, and it suggested the May 4 letters constituted the offer.

Thereafter, the University filed a motion for a partial summary judgment on Counts I through IV of Ms. Olson's petition. The University argued that the May 4 letters were an offer and that Ms. Olson's subsequent email was a counter offer, which constituted a rejection of both the three-year term and the two-month term. Finally, it argued that since Ms. Olson did not accept the offer, Counts III and IV also failed.

The trial court granted the University's motion for partial summary judgment and denied Ms. Olson's motion. The trial court then entered judgment stating that no just reason existed for delaying the appeal of the partial summary judgment. Ms. Olson appeals, raising four points.

**Standard of Review**

We review the grant of summary judgment *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). In determining the propriety of the summary judgment, we use the same criteria that the trial court employed in granting the motion. *Id.* We view the facts in the light most favorable to the non-movant and give the non-movant the benefit of all reasonable inferences. *Id.*

**Legal Analysis**

■ Ms. Olson argues in the first and second points that the trial court erred in granting summary judgment as to Counts I through IV on the ground that no contract existed because "a jury could reasonably find that the parties created two employment contracts," and a party's "intent to enter into such a contract is a question for the fact-finder." In the third point, Ms. Olson asserts that the trial court erred in granting summary judgment as to Counts I through IV on the University's defense of statute of frauds because the defense did not apply. In the fourth and final point, Ms. Olson specifically argues that the trial court erred in granting summary judgment as to Counts III and IV on the ground that a contract did not exist because those claims "rest on a factual finding that a contract exists, which must be determined by a jury." We address points one, two, and four together because they are interrelated.

Summary judgment is proper where the record shows no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Rule 74.04(c)(6).[1]

1. Rule references are to Missouri Rules of Civil Procedure 2011.

The non-movant demonstrates a genuine issue of material fact by denying the allegations and citing specific references to the discovery, exhibits, or affidavits showing a genuine issue for trial. Rule 74.04(c)(2). Facts that are not denied in accord with Rule 74.04(c)(2) are deemed admissions. *Id.*

A defendant is entitled to summary judgment as a matter of law when the defendant shows:

> (1) facts that negate any one of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements, or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

*ITT Commercial Fin.*, 854 S.W.2d at 381.

Although the defending party is the movant, the University still had to establish the right to judgment as a matter of law. *See id.* at 381–82. Ms. Olson only had to show the existence of a genuine issue with a material fact underlying the University's right to judgment. *Id.* "A 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.*

■ One of the grounds on which the University requested summary judgment was that Ms. Olson could not prove that a contract existed and that based on the undisputed facts, a contract did not exist. The existence of a contract is an element of a breach of contract claim. *See Bank of Am., N.A. v. Reynolds*, 348 S.W.3d 858, 861 (Mo.App. W.D.2011). The existence of a contract is also an integral part of a claim of breach of the covenant of good faith and fair dealing. *See Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo.App. E.D.2012) ("In Missouri, all contracts have an implied covenant of good faith and fair dealing."). As to Ms. Olson's promissory estoppel claim, a showing that a contract was not formed because the plaintiff rejected the offer on these facts would negate detrimental reliance, one of the key elements of a promissory estoppel claim, because a plaintiff who rejects the promise cannot show reliance to her detriment. *See Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007) (stating promissory estoppel requires detrimental reliance).[2] Thus, summary judgment was proper if the University established that there were no genuine issues of material fact as to the lack of a contract because Ms. Olson rejected Mr. O'Brien's offer and that the undisputed facts entitled it to judgment as a matter of law.

■ The pertinent undisputed facts include the following.[3] Ms. Olson and Mr.

---

**2.** We further note that although a promise needed to substantiate a promissory estoppel claim "must be made in a contractual sense," the existence of a contract usually defeats a promissory estoppel claim if the remedy sought is damages, as it was here, rather than specific enforcement of the promise. *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. banc 2007); *see also Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo.App. E.D.2012).

**3.** In its motion for summary judgment, the University and Mr. O'Brien included in their statement of uncontroverted facts that Mr. O'Brien told Ms. Olson that a letter would contain the terms of the appointment, that Mr. O'Brien wanted her to think about it, and that she should sign it to show her agreement. Ms. Olson denied this comment without a citation to the record. The University and Mr. O'Brien claim that according to Rule 74.04(c)(2), she admitted the truth of the com-

O'Brien met on April 20, 2010. According to Ms. Olson, during the meeting, "[they] engaged in some contract negotiations. However, there were several items that were left unresolved.... Therefore, [they] ended the meeting without a final decision on all contract specifics." Two letters dated May 4 and signed by Mr. O'Brien were sent to Ms. Olson; one of them addressed a two-month term and the other addressed a three-year term and had a place for Ms. Olson's signature. Ms. Olson neither signed nor returned that letter. Thereafter, Ms. Olson and Mr. O'Brien exchanged emails about Ms. Olson receiving compensation in addition to the amounts stated in the letters. The appointment policy of the University stated that "faculty members who accept new administrative appointments should receive appointment letters specifying [the terms]."

Contrary to the University's contentions, those undisputed facts do not entitle it to judgment as a matter of law because those facts do not negate the existence of a contract as a matter of law. Rather, inferences must be drawn from the undisputed facts to show that Ms. Olson and Mr. O'Brien did not previously enter into an agreement at the meeting. Because all inferences must be drawn in the non-movant's favor, a genuine dispute exists if the movant requires an inference to establish the right to judgment as a matter of law and the evidence reasonably supports a differing inference. *ITT Commercial Fin.*, 854 S.W.2d at 382; *see also State ex rel. Nixon v. Hughes*, 281 S.W.3d 902, 911 (Mo.App. W.D.2009).

The University's main assertion that the May 4 letter with a signature line was an offer requires the use of an inference to substantiate it. The letter does not mention a contract or offer, so to conclude that the letter was an offer required an inference to be drawn from the language (asking Ms. Olson to sign and return if she agreed with the terms of the appointment) that an oral agreement had not previously been entered. However, because all inferences must be in Ms. Olson's favor as the non-movant, whether the letter is an offer is a material fact in dispute. In her motion for summary judgment, Ms. Olson argued that the inference to be drawn from the language in the letters was that an agreement had already been made before the letters were sent.

The University's second assertion that all of the circumstances together proved no contract was formed at the meeting also requires the use of an inference to substantiate it. Those listed circumstances include the following: Ms. Olson admitted in her grievance that the meeting ended without a final decision on all contract specifics; the University's policy informed Ms. Olson that her contract to be chair would be placed in writing; Ms. Olson's behavior after the meeting; and the statute of frauds precludes the enforcement of an oral contract that cannot be performed within one year.

■ With the exception of the statute of frauds issue, which will be discussed later, the circumstances require inferences to be drawn to establish Ms. Olson's intent not to enter into an oral agreement. First, Ms. Olson admitted some issues were not resolved at the meeting, but she did not say a contract was not created. A contract

---

ments because she gave a general denial. The default admission of Rule 74.04 does not apply here because, Ms. Olson incorporated her statement of facts from her summary judgment motion in further denial of the statement of uncontroverted facts, which ref-

erenced her affidavit statement that she was offered the position at the meeting and accepted it at the meeting. Because she did not rely solely on her pleadings, the default admission in Rule 74.04 did not apply. Thus, the truth of the comments remains disputed.

can be created even if all issues have not been resolved as long as the terms of the agreement are present and reasonably certain. *See Raskas Foods, Inc. v. Southwest Whey, Inc.* 978 S.W.2d 46, 50 (Mo.App. E.D.1998). "If the parties reserve any of the essential terms of the purported contract for future determination, there is no valid binding agreement." *L.B. v. State Committee of Psychologists,* 912 S.W.2d 611, 617 (Mo.App. W.D.1995).

■ In its suggestions in support of its motion, the University contended that compensation was an undecided, essential term of any alleged three-year contract because the parties had not agreed upon a stipend. In Ms. Olson's response and on appeal, she claims that the stipend was not an essential term. "The 'essential' terms of unperformed promises must be stated; 'details or particulars' need not. What is essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Shellabarger v. Shellabarger,* 317 S.W.3d 77, 82 (Mo.App. E.D.2010) (internal citations omitted).

Here, the undisputed facts showed that the position of chair provided prestige as well as significantly higher pay. The letters mention compensation to be $14,000 for two months and $77,000 for the first year of a three-year term. The stipend that Ms. Olson requested in her emails was comparatively small ($2,000–$3,000). She also requested additional compensation for her then present work for the Department. The language in the emails and the amount of the stipend do not show that the stipend was an essential term to the contract.

Second, the appointment policy merely outlines the considerations regarding compensation for academic administrators with tenure. It does not state that appointments must be in writing to be effective. Rather, it states that letters should be written to explain the duties of new appointees and the calculation of their salaries. It also provides for "other arrangements" upon approval. Thus, an inference has to be drawn that a valid contract for appointment had to be in writing.

Third, Ms. Olson's behavior in emailing rather than signing and returning the letter does not automatically constitute a rejection of an offer because whether the letter was an offer is a disputed material fact. The language used in the emails by both parties support a reasonable inference that they were referencing an oral agreement as well as a reasonable inference that they were referencing an offer.

Consequently, the same undisputed facts supporting an inference that the post-meeting letter was an offer also support an inference that the parties orally agreed to two separate contracts at the meeting, subject to a few unsettled, nonessential issues and that the letter addressed those issues. Because a genuine dispute exists as to whether a contract existed, summary judgment was improper as to Counts I through IV. Consequently, Olson's first, second, and fourth points are granted.

■ Turning to the statute of frauds issue, the trial court did not state that the statute of frauds was a basis for its ruling. Generally, we affirm a summary judgment on any legal theory supported by the record. *See Moran v. Kessler,* 41 S.W.3d 530, 537 (Mo.App. W.D.2001). The statute of frauds applies when the contract cannot be performed within a year. § 432.010.[4] In

---

4. Section 432.010 provides in relevant part:

No action shall be brought.... upon any agreement that is not to be performed with-

such cases, it must be shown that the party against whom enforcement is sought, or "some other person by him thereto lawfully authorized," signed a memorandum evidencing the essential terms of the oral agreement. *Id.; see also McCoy v. Spelman Mem. Hosp.*, 845 S.W.2d 727, 730 (Mo.App. W.D.1993) (stating that to satisfy the statute of frauds the memo must contain the essential terms of the employment relationship).

■ The statute of frauds defense was not applicable to Count IV. *See Piazza v. Combs*, 226 S.W.3d 211, 223 (Mo.App. W.D.2007) (stating that promissory estoppel in certain circumstances is an exception to the statute of frauds). Nor was the affirmative defense applicable to Count I (breach of two-month agreement) because the two-month appointment could be performed within a year. To the extent the trial court ruled in favor of the University based on the application of the statute of frauds as to Counts I and IV, it erred. As for Count III, the defense is only partially applicable in that it may bar a claim of breach of the covenant of good faith and fair dealing as to the alleged three-year contract, but not the two-month contract.

Ms. Olson claims that the letters satisfy the statute of frauds as to the three-year agreement because they are memorandums evidencing the terms of the oral agreement and were signed by Mr. O'Brien. In its suggestions, the University contended that the letters were offers and written offers do not satisfy the statute of frauds, relying on *McCoy*. *McCoy* states that a memo evidencing an offer does not satisfy the statute of frauds. 845 S.W.2d at 730. *McCoy* is distinguishable from this case because the letter in *McCoy* lacked the essential term of duration and stated that its purpose was to reconfirm "the offer." *Id.* at 729.

Here, the issue is whether the letters signed by Mr. O'Brien, which state all of the essential terms, are offers or memorandums reflecting an agreement. Because this is a disputed issue, the applicability of the statute of frauds is a mixed question of law and fact. We remand the issue to the trial court to decide. Ms. Olson's third point is granted.

### Conclusion

Therefore, we reverse the partial summary judgment in favor of the University and remand Counts I through IV to the trial court for further proceedings consistent with this decision.

WELSH, C.J., and TUCKER, Sp. J. concur.

---

in one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract. Statutory references are to RSMo 2000 and the Cumulative Supplement 2011.