

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| PAUL D. MATTHES, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| v. | ) | WD76668 |
| | ) | |
| | ) | OPINION FILED: |
| DAVID D. WYNKOOP and WALKER-WALKER FAMILY LIMITED PARTNERSHIP, | ) | June 30, 2014 |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Respondents-Appellants. | ) | |

**Appeal from the Circuit Court of Henry County, Missouri**
**The Honorable Robert M. Liston, Judge**

**Before Division One:** Joseph M. Ellis, Presiding Judge, and
Karen King Mitchell and Anthony Rex Gabbert, Judges

Paul D. Matthes appeals the trial court's judgment granting David D. Wynkoop and Walker-Walker Family Limited Partnership's[1] motion to dismiss Matthes's personal injury suit and motion to enforce settlement. Matthes raises two points on appeal.[2] Matthes claims the trial court erred in granting both the motion to dismiss and the motion to enforce settlement because Defendants failed to show by clear and convincing evidence that a settlement agreement was

---

[1] For ease of reference, we refer to David D. Wynkoop and Walker-Walker Family Limited Partnership as "Defendants."

[2] To avoid confusion, we address Matthes's points in reverse order.

reached during oral negotiations between Matthes and Defendants in that testimony from Matthes's former counsel indicating that Defendants' insurer offered to settle Matthes's claims for $17,000 was 1) confidential information admitted in violation of section 491.060;[3] and 2) erroneously admitted hearsay evidence. Matthes contends that, without this testimony, there was insufficient evidence that Defendants offered to settle Matthes's claims for $17,000. Next Matthes contends that the trial court erred in granting both the motion to dismiss and the motion to enforce settlement because if Defendants did not offer to settle Matthes's claims for $17,000, then his communication of willingness to settle for $17,000 constituted an offer (rather than acceptance of a previous offer), and no settlement agreement was reached in that Defendants' response contained new terms, and therefore was not an acceptance, but a counteroffer.

Defendants cross-appeal, contending that the trial court erred in assessing costs against them because Matthes was not the "prevailing party" in the litigation.

We affirm in part, reverse in part, and remand.

### Factual and Procedural Background[4]

On January 4, 2010, Paul D. Matthes and David D. Wynkoop were involved in a motor vehicle accident. Matthes alleges that Wynkoop rear-ended him while Wynkoop was driving a tractor-trailer operated under the motor carrier authority of Walker-Walker Family Limited Partnership. On February 14, 2010, Matthes entered into a contract with the law firm Beck and Beck[5] to represent him in his legal claim against Defendants. On November 9, 2010, Michael Beck sent a demand letter for $50,000 to Defendants' insurer.

---

[3] All statutory references are to Missouri Revised Statutes (2000), as updated through the 2013 Cumulative Supplement.

[4] "All evidence and permissible inferences favorable to the prevailing party are accepted as true; evidence and inferences to the contrary are disregarded." *B-Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. App. W.D. 1998).

[5] Michael Beck and his son John Beck are members of the firm. To avoid confusion, Michael Beck is referred to by his full name, and John Beck is referred to as either John Beck or Beck.

John Beck engaged in oral settlement negotiations with Defendants' insurer on Matthes's behalf. During negotiations, Defendants' insurer offered to settle the claim for $17,000.[6] Beck communicated the terms of the offer to Matthes, and Matthes told Beck to accept the settlement offer. Beck communicated Matthes's acceptance of the settlement offer to Defendants' insurer. Beck then communicated to Matthes that the case was settled. On February 9, 2011, Defendants' insurer sent Beck a release, along with a letter that stated the release would "finalize our claim." Matthes did not sign the release.

On June 17, 2011, through new counsel, Matthes brought a personal injury action against David D. Wynkoop and Walker-Walker Family Limited Partnership, based on the January 4, 2010 motor vehicle accident. In Defendants' respective answers to Matthes's petition, they raised the affirmative defense that Matthes's claims were barred because Matthes had previously agreed to settle the claims alleged in his petition. On August 16, 2011, Defendants filed their Motion to Enforce Settlement, contending that the parties had entered into a pre-litigation settlement agreement that resolved Matthes's claims.

On March 29, 2013, the court held an evidentiary hearing on the motion to enforce the settlement. Beck, the sole witness at the hearing, testified regarding the settlement agreement and release. Beck testified that he represented to Defendants' insurer that he was Matthes's attorney; Beck negotiated with Defendants' insurer; there was an offer made by the insurer, and the offer was communicated to Matthes; Beck had discussed with Matthes the settlement amount, and that Plaintiff would net $10,000; Beck and the insurer came to an agreement with respect to a settlement, and the settlement amount was $17,000; Beck told Matthes the terms of

---

[6] We note that the Defendants' offer to settle for $17,000 could be considered a counteroffer in response to Beck's November 9, 2010 demand letter. Whether Defendants' $17,000 offer is considered an offer or a counteroffer is irrelevant to our analysis, as the issue is whether there was sufficient evidence of the offer/counteroffer. Because the trial court characterized this as Defendants' offer to settle for $17,000, to avoid confusion, we refer to it as an "offer."

3

the settlement before he agreed to accept it from the insurer; Matthes advised Beck that he wanted to accept a $17,000 settlement; Matthes agreed to accept the $10,000 net amount out of the $17,000 offer; Beck settled the case on behalf of Matthes; Beck communicated to Matthes that the case was settled; when Beck represented to the insurer "the amount of the demand and that offer was made," Beck assumed the case was settled; and Beck's impression was that the case was settled prior to him receiving the release.

In regard to the release, Beck testified as follows: he told Matthes that Matthes would "receive X dollars in your pocket, and essentially the terms of this release are they'll pay you X dollars in exchange for you agreeing to never sue anyone regarding this auto accident again," and Beck told Matthes to read the release and call Beck if he had any questions about it; the written release sent by the insurer contained the essential terms of the settlement; the written release fairly and accurately set out the negotiation Beck had with the representative of the insurer; there was "an agreed-upon settlement," and Beck did not consider the insurer's letter and release a counteroffer, but rather "just a memorialization of a prior agreement"; Beck did not consider the release terms addressing indemnity and confidentiality to be material terms of the settlement; Beck's mental impression was that the February 9, 2011 letter from Defendants' insurer confirmed the settlement he made with the insurer's representative on behalf of Matthes; Beck did not remember Matthes ever objecting to any portion of the release; Beck never received a signed copy of the release from Matthes; and Beck learned through third parties that the settlement he had made was being rejected by Matthes. In addition, the February 9, 2011 letter and release sent to Beck from Defendants' insurer was admitted at trial. The letter refers to the "final release that will finalize our claim." Matthes offered no evidence to contradict Beck's testimony.

4

On April 15, 2013, the trial court entered its Findings of Fact, Conclusions of Law and Judgment on Defendants' Affirmative Defense,[7] sustaining Defendants' Motion to Enforce the Settlement. The court determined that Defendants made a settlement offer of $17,000, and Matthes accepted the offer. However, the court rejected the release provided by Defendants' insurer, finding that it did not conform to the parties' agreement. Specifically, the court found that provisions of the release pertaining to indemnification, release of physicians and the Highway Department, a confidentiality agreement, and payment of liens to medical providers were not part of the original settlement agreement, and that the release "overreached in terms of what had been negotiated." The court also determined that there was insufficient evidence to establish that Matthes agreed to provide the Medicare Mandatory Insurer Reporting Law Confirmation Form to the insurer. The court stated that upon presentation of a release in conformity with the settlement agreement, it would dismiss the cause as barred by the settlement reached.

On May 28, 2013, Defendants filed an amended motion to dismiss and enforce judgment, attaching a release purporting to conform to the terms of the settlement as found by the trial court in its previous order, and requesting that the court order Matthes to sign the release and that the court dismiss the case with prejudice.

On June 14, 2013, the trial court entered its judgment. The judgment adopted the findings of fact and conclusions of law set forth in the April 15, 2013 order. The court found that Defendants filed a release that conformed to the terms of the settlement pursuant to the court's April 15, 2013 order and that Matthes refused to sign the release. The court dismissed Matthes's claims with prejudice and assessed costs against Defendants.

---

[7] On May 15, 2013, on inquiry from the parties, the trial court clarified that this ruling was not a final judgment and amended the ruling to denominate it as an "Order."

5

Matthes appeals, and Defendants cross-appeal.

## Analysis

### I. Matthes's Appeal

Matthes raises two points on appeal. In order to succeed on his first point on appeal, Matthes must succeed on his second point on appeal. Therefore, we address his points in reverse order. Matthes contends that the trial court erred in granting both the motion to dismiss and the motion to enforce settlement because Defendants failed to show by clear and convincing evidence that the parties reached a settlement agreement during their oral negotiations in that Defendants failed to prove that they made a $17,000 settlement offer. Specifically, Matthes argues that the only evidence of a settlement offer by Defendants came from the testimony of Matthes's previous counsel, Beck, and that his testimony was erroneously admitted in that 1) he was allowed to testify about confidential information in violation of section 491.060; and 2) his testimony was hearsay. (Point II). Based on his contention that there was insufficient evidence that Defendants offered to settle Matthes's claims for $17,000, Matthes recasts his alleged acceptance of Defendants' offer as an offer to settle for $17,000[8] and recasts Defendants' insurer's letter of February 9, 2011 (including the proposed release) as a counteroffer. Based on this characterization of the evidence, Matthes contends that the trial court erred in granting Defendants' motions to dismiss and to enforce settlement because no settlement agreement was reached in that Defendants' purported acceptance (the February 9, 2011 letter and release) of his offer to settle for $17,000 contained new terms and therefore was not an acceptance, but a counteroffer. (Point I). Because we find that there was sufficient evidence of an offer by

---

[8] Apparently, Matthes concedes that there was evidence that he communicated a willingness to settle his claims arising out of the January 4, 2010 accident for $17,000.

Defendants to settle for $17,000, we reject Matthes's Point II, and because his success on Point II is a predicate to his claim in Point I, we reject Matthes's Point I as well.

"'When reviewing a trial court's judgment enforcing a settlement, we will affirm unless the judgment is against the weight of the evidence, there is no substantial evidence to support it, or the court erroneously applied or declared the law.'" *Williams v. Kansas City Title Loan Co., Inc.*, 314 S.W.3d 868, 869 (Mo. App. W.D. 2010) (quoting *Ste. Genevieve Cnty. Levee Dist. # 2 v. Luhr Bros.*, 288 S.W.3d 779, 782 (Mo. App. E.D. 2009)). "We view the evidence in the light most favorable to the trial court's judgment, disregarding all contrary inferences and evidence." *Ste. Genevieve Cnty. Levee Dist. # 2*, 288 S.W.3d at 782. "We 'defer[ ] to the trial court's findings of fact, recognizing the superior ability of the trial court to judge the credibility of the witnesses.'" *Id.* at 782-83 (quoting *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 458 (Mo. App. S.D. 2006)). "Thus, we will set aside a judgment as against the weight of the evidence only upon a firm belief that the trial court was wrong." *Id.* at 783.

"'A motion to enforce a settlement adds to the underlying case a collateral action seeking specific performance of the agreement.'" *Paragon Lawns, Inc. v. Barefoot, Inc.*, 304 S.W.3d 298, 300 (Mo. App. W.D. 2010) (quoting *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007)). "The party moving for enforcement must prove the existence of the settlement agreement 'by clear, convincing and satisfactory evidence.'" *Id.* (quoting *Eaton*, 224 S.W.3d at 599). "'Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true.'" *Grant v. Sears*, 379 S.W.3d 905, 915 (Mo. App. W.D. 2012) (quoting *Reppy v. Winters*, 351 S.W.3d 717, 721 (Mo. App. W.D. 2011)).

"Settlement agreements are contracts and subject to contract law." *Women's Care Specialists, LLC v. Troupin*, 408 S.W.3d 310, 315 (Mo. App. E.D. 2013). "To show a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and consideration." *Voyles v. Voyles*, 388 S.W.3d 169, 172 (Mo. App. E.D. 2012). "Because a settlement agreement is a species of contract and, therefore, subject to contract law, a meeting of the minds is required." *B-Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. App. W.D. 1998). This court looks at the objective manifestations of the parties in order to determine whether a meeting of the minds has occurred. *Id.* at 78. "It is the actions, and not the intentions or suppositions of the parties, that determine whether or not there is a contract and the terms of the contract." *Id.*

A settlement agreement does not have to be in writing unless the subject matter is within the statute of frauds. *Id.* at 77. "'A contract is the agreement . . . parties [make] and not the writing which evidences the agreement.'" *Vulgamott v. Perry*, 154 S.W.3d 382, 392 (Mo. App. W.D. 2004) (quoting *Bailey v. Jamestown Sch. Dist. No. 11*, 77 S.W.2d 1017, 1020 (Mo. App. 1934)). Furthermore, a settlement agreement "may be considered valid and enforceable even if it contemplates that a release will be signed at a later time." *B-Mall Co.*, 977 S.W.2d at 77; *see also Owen v. Hankins*, 289 S.W.3d 299, 304 (Mo. App. S.D. 2009); *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo. App. S.D. 1992). A settlement agreement "will be valid and enforceable even if some terms may be missing or left to be agreed upon as long as the essential terms are sufficiently definite to enable the court to give them exact meaning." *Vulgamott*, 154 S.W.3d at 390; *see also Olson v. Curators of Univ. of Mo.*, 381 S.W.3d 406, 411-12 (Mo. App. W.D. 2012) ("A contract can be created even if all issues have not been resolved as long as the terms of the agreement are present and reasonably certain."). Which contractual terms are "essential depends

on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. App. E.D. 2010); *see also Bryant v. Bryan Cave, LLP*, 400 S.W.3d 325, 342 (Mo. App. E.D. 2013); *Olson*, 381 S.W.3d at 412. "In determining whether the terms of an agreement are too uncertain to create an enforceable contract, 'a court is guided by [general] principles of law applied with common sense and in the light of experience.'" *Bldg. Erection Servs. Co. v. Plastic Sales & Mfg. Co.*, 163 S.W.3d 472, 477 (Mo. App. W.D. 2005) (quoting *Ketcherside v. McLane*, 118 S.W.3d 631, 636 (Mo. App. S.D. 2003)) (internal quotation marks omitted). "A contract should not be held void for uncertainty unless there is no possibility of giving meaning to the agreement." *Id.*

Matthes argues that the Defendants failed to prove that the oral negotiations between Beck and Defendants' insurer resulted in a valid settlement agreement because the trial court erroneously admitted Beck's testimony that Defendants' insurer offered to settle Matthes's claims for $17,000. In determining whether there was sufficient evidence for the trial court to find that the parties had entered into a settlement agreement, we find it necessary to consider what evidence the trial court could have properly relied upon in making its determination that Defendants' insurer offered to settle Matthes's claims for $17,000. This requires us to address Matthes's argument that Beck's testimony regarding Defendants' offer was inadmissible hearsay and violated section 491.060(3).

**A.     The trial court did not improperly rely on hearsay evidence in making its determination that Defendants' insurer offered to settle Matthes's claims for $17,000.**

Matthes points to four specific responses in Beck's testimony that he contends constitute inadmissible hearsay: 1) testimony that Beck participated in negotiations with Defendants'

9

insurer; 2) testimony that he and the insurance adjuster came to a resolution of the case; 3) testimony that the settlement was $17,000, including $10,000 in-pocket recovery to Matthes; and 4) testimony that it was his impression that the insurance company had offered $17,000 to settle this case. Matthes contends that Beck's testimony as to what the insurance adjuster said or did contained an out-of-court statement offered to prove that there was an offer and acceptance in this case. He claims that without the admission of such testimony, there was no substantial evidence of a settlement "other than the testimony of John Beck who had a motive for the case to be settled since he withdrew and did not file suit on behalf of Plaintiff." Defendants counter that the disputed testimony does not relate an out-of-court statement, and that even if it did, the statements were offered, not for the truth of the matter asserted, but rather to establish that Defendants' representative extended an offer to settle the case for $17,000. In other words, the statements were offered to counter Matthes's contention that no such offer was ever made by Defendants.

"A hearsay statement is an out-of-court statement offered for the truth of the matter asserted therein and 'depends on the veracity of the statement for its value.'" *Saint Louis Univ. v. Geary*, 321 S.W.3d 282, 291 (Mo. banc 2009) (quoting *State v. Johnson*, 284 S.W.3d 561, 584 (Mo. banc 2009)). "Hearsay is inadmissible unless it fits into a recognized exception or it is used for a nonhearsay purpose. A nonhearsay purpose includes offering the statement not for the truth of the matter asserted, but for some other purpose." *Id.* (Citations omitted.) For example, "when . . . the testimony is offered only to show the statement was made without regard to the truth or falsity of the statement itself, the testimony is not hearsay." *Henges Assocs., Inc. v. Indus. Foam Prods., Inc.*, 787 S.W.2d 898, 900 (Mo. App. E.D. 1990); *see also Coon v. Am. Compressed Steel, Inc.*, 207 S.W.3d 629, 635 (Mo. App. W.D. 2006). "Evidence admitted for a

10

limited purpose may . . . be considered for that purpose alone. However, judges are presumed not to consider evidence for an improper purpose." *Teasdale & Assocs. v. Richmond Heights Church of God in Christ*, 373 S.W.3d 17, 25 (Mo. App. E.D. 2012) (citations omitted).

Matthes alleges that the testimony at issue references statements made by Defendants' insurer in the course of negotiations and constitutes hearsay. However, we find that these statements were admissible for the nonhearsay purpose of showing that the statements were made, countering Matthes's contention that no such statements were made. This purpose does not contemplate the truth or falsity of the statements themselves. Therefore, Beck's testimony was not inadmissible hearsay, but rather evidence upon which the trial court could rely in determining whether the parties reached a valid settlement agreement.

**B. The trial court did not err in admitting evidence allegedly protected by the attorney-client privilege.**

Matthes contends that the trial court, in violation of section 491.060(3), erroneously allowed Beck to respond to the following questions: 1) "Is there a controversy with respect to the actions you took on behalf of Mr. Matthes with respect to a potential defendant?"; 2) "And what is that controversy?"; and 3) "Did you settle a case for Mr. Matthes?" Matthes does not set forth Beck's responses to these questions or explain why such responses are subject to attorney-client privilege.

In regard to the first question, we note that Matthes's counsel objected to the question, the objection was overruled, and counsel restated the question as follows: "To your knowledge, has a controversy arisen with respect to your representation of Mr. Matthes with respect to defendants or potential defendants?" Beck responded, "There has." Concerning the second question, Matthes's counsel objected, the objection was overruled, and Beck asked that the question be restated. Instead, Defendants' counsel then asked the third question: "Did you settle

11

a case for Mr. Matthes?" Matthes's counsel again objected and the objection was overruled. Beck responded, "Yes." As there was no response to the second question, we address only whether the responses to the first and third questions are subject to the protection of the attorney-client privilege.

Section 491.060(3) provides that an attorney shall be incompetent to testify "concerning any communication made to the attorney by such attorney's client in that relation, or such attorney's advice thereon, without the consent of such client." We find this court's opinion in *Sappington v. Miller*, 821 S.W.2d 901 (Mo. App. W.D. 1992), dispositive of Matthes's claim that the testimony at issue violated attorney-client privilege. In *Sappington*, two parties who had filed claims against each other regarding a property dispute, Sappington and Miller, reached an oral settlement. 821 S.W.2d at 903. Sappington's counsel prepared a document formalizing the oral settlement agreement. *Id.* However, Miller never signed the document, and the actions contemplated in the agreement never took place. *Id.* Sappington filed a petition for specific performance of the oral settlement agreement. *Id.* Miller's former attorney was called as a witness. *Id.* He testified that he had conducted settlement negotiations with Sappington's attorney, that the two attorneys had reached an oral agreement settling the parties' claims, that Miller had expressly given him the authority to enter into the settlement negotiations, that Miller expressly agreed to the settlement reached by the attorneys, and that Miller later changed her mind and refused to sign the document. *Id.* The trial court ordered both parties to carry out the terms of the settlement agreement. *Id.*

On appeal, Miller claimed the trial court erred in allowing her former attorney to testify concerning his representation of her in the underlying action, claiming that such testimony was a violation of attorney-client privilege. *Id.* at 904. This court held that Miller's attorney "could

12

testify about the nature and extent of his authority to enter into the settlement agreement . . . without implicating the doctrine of attorney-client privilege." *Id.* The court explained:

> [U]nder Missouri law, the attorney-client relationship is an agency relationship governed by the same rules which apply to other agencies. Generally, the fact or scope of agency cannot be established by extra judicial admissions, but, that rule does not extend to the sworn testimony of the alleged agent. An agent may testify both as to the fact and to the nature and extent of his authority, where it rests in parol.
>
> . . .
>
> An attorney can testify as to his authority to settle, since such communication is not within the pale of protection of the privilege. The authority of the attorney, like that of any agent, may be established by the attorney and his testimony in that regard is admissible to prove the agency and the nature and scope of his authority to sign the agreement in question.

*Id.* (Citations omitted.) The court then determined that even if Miller's attorney's testimony concerning the settlement agreement was covered by the attorney-client privilege, Miller placed the subject matter of the privileged communication in issue by claiming that the two attorneys "concocted" the settlement agreement without her consent or authorization; consequently, she waived any attorney-client privilege, and the trial court did not err in allowing Miller's attorney to testify concerning his representation. *Id.* at 904-05. The court stated that "'[n]o court should countenance an announced settlement between counsel followed by escape therefrom, if one side arbitrarily reneges and then seals his counsel's lips by invoking the attorney-client privilege.'" *Id.* at 905 (quoting *Hamilton v. Hamilton Steel Corp.*, 409 So.2d 1111, 1114 (Fla. App. 1982)).

We find Beck's testimony that, to his knowledge, a controversy had arisen regarding Beck's representation of Matthes to fall within the scope of testimony regarding his representation of Matthes during settlement negotiations, and under *Sappington*, such testimony does not implicate the doctrine of attorney-client privilege. *See Sappington*, 821 S.W.2d at 904. In addition, as Matthes's new counsel denied the existence of a settlement in his opening

13

statement (and, in fact, by the very filing of Matthes's petition in this case), Matthes placed the subject matter of the allegedly privileged communication in issue; consequently, he waived any attorney-client privilege, and the trial court did not err in allowing Beck to testify concerning his representation. *See id.* at 904-05.

We also find Beck's testimony that he settled a case for Matthes to clearly fall within the scope of testimony regarding an attorney's authority to negotiate a settlement, which we found in *Sappington* does not violate attorney-client privilege. Also, as discussed, *supra*, Matthes's denial of the existence of a settlement placed the subject matter of the cited communication at issue, and therefore, Matthes waived any claim of attorney-client privilege as to the communication.[9]

Point II is denied. Because Matthes's Point I is predicated on the assumption that the trial court erred in finding that Defendants' insurer offered to settle Matthes's claims for $17,000, and thus Matthes's expression of his willingness to settle for $17,000 was itself an offer, rather than the acceptance of an offer, our denial of Point II also disposes of Point I.

## II. Defendants' Cross-Appeal

In their sole point on cross-appeal, Defendants contend that the trial court erred in assessing costs against them because Matthes was not the "prevailing party" in the litigation. We agree.

"The award of costs is a matter within the trial court's sound discretion, and we will not disturb the award absent a showing of an abuse of discretion." *Sasnett v. Jons*, 400 S.W.3d 429, 441 (Mo. App. W.D. 2013). "To demonstrate an abuse of discretion, the appellant must show

---

[9] Although the scope and details of the negotiations that took place between Beck and Defendants' insurer are not clear from Beck's testimony or any other evidence admitted by the trial court, Matthes does not allege that the evidence was insufficient to prove any essential element of the settlement agreement other than that an offer was made by Defendants' insurer. And as to the essential element of offer, Matthes alleges only that the evidence was insufficient in that Beck's testimony that such an offer occurred was inadmissible for the reasons discussed above. Matthes does not allege that, even if Beck's testimony was properly admitted, there was insufficient evidence of a valid settlement agreement.

14

that the circuit court's decision 'was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.'" *Id.* (quoting *Russell v. Russell*, 210 S.W.3d 191, 199 (Mo. banc 2007)).

Section 514.060 provides that "[i]n all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law." *See also* Rule 77.01.[10] "Statutes allowing the taxation of costs are strictly construed." *Gene Kauffman Scholarship Found., Inc. v. Payne*, 183 S.W.3d 620, 627 (Mo. App. W.D. 2006). "Prevailing party" is not defined in the statute. "When a statute fails to define a word, a dictionary may be consulted to verify the word's plain and ordinary meaning." *Corley v. Corley*, 128 S.W.3d 521, 526 (Mo. App. W.D. 2003). Black's Law Dictionary, page 1232 (9th ed. 2009) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded."

"Prevailing party" has been defined in various ways by Missouri courts. Consistent with the Black's Law Dictionary definition, some courts have defined a "prevailing party" as "one who obtains a judgment from the court, regardless of the amount of damages." *Brooke Drywall of Columbia, Inc. v. Bldg. Constr. Enters., Inc.*, 361 S.W.3d 22, 27 (Mo. App. W.D. 2011); *see also Rental Co., LLC v. Carter Group, Inc.*, 399 S.W.3d 63, 67 (Mo. App. W.D. 2013) (both opinions also noting that "[a] party need only obtain 'some relief' from the court in order to be deemed the 'prevailing party'"). In other instances, courts have found that "[a] prevailing party is the party prevailing on the main issue in dispute, even though not necessarily to the extent of its original contention." *Ken Cucchi Constr., Inc. v. O'Keefe*, 973 S.W.2d 520, 528 (Mo. App. E.D. 1998); *see also State ex rel. Nixon v. Patriot Tobacco Co.*, 220 S.W.3d 889, 892 (Mo. App. E.D. 2007); *Corley*, 128 S.W.3d at 526; *Miller v. Gammon & Sons, Inc.*, 67 S.W.3d 613, 625

_____

[10] All rule references are to the Missouri Court Rules 2013, unless otherwise noted.

15

(Mo. App. W.D. 2001); *Birdsong v. Bydalek*, 953 S.W.2d 103, 124 (Mo. App. S.D. 1997) (citing both the "main issue" definition and the "side with the most points at the end of the contest" definition, discussed *infra*). "Prevailing party" has also been defined as "one who obtains success on any significant issue in the litigation, achieving some of the benefit the party sought in bringing suit." *Alhalabi v. Mo. Dep't of Natural Res.*, 300 S.W.3d 518, 530 (Mo. App. E.D. 2009); *see also DeWalt v. Davidson Service/Air, Inc.*, 398 S.W.3d 491, 506 (Mo. App. E.D. 2013); *Holmes v. Kansas City Mo. Bd. of Police Comm'rs ex rel. Its Members*, 364 S.W.3d 615, 631 (Mo. App. W.D. 2012). In other opinions, courts have found that

> [t]here can be but one prevailing party in an action at law for the recovery of a money judgment. It transpires frequently that in the verdict each party wins on some of the issues and as to such issues he prevails, but the party in whose favor the verdict compels a judgment is the prevailing party. Each side may score, but the one with the most points at the end of the contest is the winner[.]

*Ozias v. Haley*, 125 S.W. 556, 557 (Mo. App. 1910); *see also Birdsong*, 953 S.W.2d at 124 (citing both the "main issue" definition and the "side with the most points at the end of the contest" definition). In addition, courts have found that "[t]he term 'prevailing party' applies not only to parties who obtain a favorable judgment on the merits, but also to those '. . . obtaining a favorable decision on a single issue if the issue is one of significance to the underlying case.'" *In re C.M.C.*, 173 S.W.3d 695, 700 (Mo. App. W.D. 2005) (quoting *Greenbriar Hills Country Club v. Dir. of Revenue*, 47 S.W.3d 346, 353 (Mo. banc 2001)). We need not determine which definition to employ in the present case, as we find that Matthes is not a "prevailing party" as contemplated by any of the above-referenced definitions.

The trial court gave two reasons for assessing costs against Defendants. First, it did so on the basis that the release Defendants sought to enforce "was not in accordance with the agreement, and the Court has had to modify that pursuant to the case law." Second, the court

16

stated that "the statutes require [that costs] be taxed to the losing party," and that the "losing party" was Defendants, as they are "paying more money than [they] wanted to pay."

Defendants contend that Matthes does not qualify as a "prevailing party" because Defendants prevailed on the sole issue they raised in the case, namely, enforcement of the settlement agreement barring Matthes's claim and the resulting dismissal of Matthes's lawsuit with prejudice. Defendants argue that the trial court's order to modify the release does not transform Matthes into the prevailing party.[11] To the contrary, Defendants contend, Matthes never sought modification of the release; rather, Matthes's contention was that no settlement agreement had been reached. Defendants also note that Matthes refused to execute the modified release even after the trial court was satisfied that the release comported with the terms of the settlement agreement. Because there is no issue in the trial court for which Matthes received the benefit he had sought, Defendants contend, the trial court abused its discretion in assessing costs against them. We agree.

In Defendants' Motion to Enforce Settlement, the Defendants requested that the trial court "order plaintiff to sign the release of all claims and dismiss this matter with prejudice." The release referred to in Defendants' motion was the release provided to Beck on February 9, 2011 (original release). In its April 15, 2013 Order, the court sustained Defendants' motion to enforce settlement, finding that a settlement agreement was reached, but rejected the original release, finding that it was "not in conformity to the agreement reached." The court stated that upon presentation of a release in conformity with the parties' agreement, the court would dismiss Matthes's cause as barred by the settlement reached. While the Order states that it sustains Defendants' motion to enforce settlement, it did not give Defendants the exact relief they requested in that motion, i.e., ordering Matthes to sign the original release and dismissing with

---

[11] Defendants also point out that they did not oppose the trial court's order to modify the release.

17

prejudice. Rather, the court ordered Defendants to draft and present a new release in conformity with the Order. However, the court's order to modify the release did not transform Matthes into the prevailing party, as he did not seek a modification of the release to conform to the settlement agreement; rather, he contended that there was no settlement agreement reached. Indeed, Matthes refused to sign the new release even when it was modified to conform to the settlement agreement, and consequently, his petition was dismissed with prejudice. Defendants' "loss" on their request that the court order Matthes to sign the original release did not transform Matthes into the prevailing party where Matthes received none of the relief he sought, his cause was dismissed with prejudice, and he did not obtain a favorable decision on a single issue of significance to the underlying case, i.e., his petition for damages.

Defendants' cross-appeal is granted.

### Conclusion

We affirm the trial court's judgment granting Defendants' motion to dismiss, reverse the trial court's assessment of costs against Defendants, and remand for further proceedings on the issue of the assessment of costs.

_____
Karen King Mitchell, Judge

Joseph M. Ellis, Presiding Judge, and
Anthony Rex Gabbert, Judge, concur.

18