**James R. REPPY, Appellant,**

v.

**Gary WINTERS, et al., Respondent.**

**Nos. WD 72923, WD 73017.**

Missouri Court of Appeals,
Western District.

Aug. 9, 2011.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 2011.

Application for Transfer Denied
Dec. 6, 2011.

Stephen G. Sanders, Kenneth H. Crumpler, Wm. Dirk Vandever and Christopher P. Sweeny, Kansas City, MO, for Appellant.

James C. Morrow and M. Todd Moulder, Kansas City, MO, for Respondents.

Before Division IV: LISA WHITE HARDWICK, Chief Judge, Presiding, MARK D. PFEIFFER, Judge, and ROBERT M. SCHIEBER, Special Judge.

MARK D. PFEIFFER, Judge.

James A. Reppy ("Reppy") appeals the judgment of the Circuit Court of Clay County, Missouri ("trial court"), granting Gary A. Winters's Motion to Dismiss and to Enforce Settlement. On appeal, Reppy argues that the evidence does not support

the trial court's conclusion that the parties had achieved an agreement to settle. We agree and reverse the trial court's judgment.

### Statement of Facts and Procedural History

On August 12, 2006, Reppy was seriously injured in a head-on vehicular collision between Winters's vehicle and a vehicle in which Reppy was a passenger. Counsel for Reppy sent a letter to Winters's auto liability insurer, Farmers Insurance Group ("Farmers"), on March 16, 2007. The letter stated, in relevant part:

James Reppy will accept [the total policy limits—from all sources of insurance covering Gary Winters and/or the vehicle he was driving at the time of the wreck] and in exchange will execute a release substantially in the form of the one attached here ... fully and finally settling all his claims against Gary Winters. Because this amount is far below the amount of Mr. Reppy's actual damages, he will also require notarized affidavits from your company and Gary Winters, substantially in the form attached hereto ... stating under oath the total insurance covering Gary Winters and the vehicle he was driving at the time of the wreck.

[T]his offer will remain open for ninety (90) days from your receipt of this letter, after which it will be retracted ....

If we have not fully resolved this matter within ninety days, my client plans to withdraw this offer of settlement and pursue litigation.

The letter containing the settlement proposal on behalf of Reppy did not mention indemnification nor any medical liens.

In a letter dated June 12, 2007, Winters's retained counsel replied to the letter from Reppy's counsel, stating, in part:

We are writing to accept your March 16, 2007 demand for payment of Mr. Winters' $30,000 per person automobile personal injury policy limit. . . .

Despite the purported acceptance, the letter went on to state:

Additionally, it is not clear from our file whether your client's settlement proceeds are subject to any type of medical ... lien. As such, *we will proceed forward with the settlement with the understanding that your office will be responsible to indemnify our client, his insurer, and our office for liability for any type of lien.*

(Emphasis added.)

Counsel for Reppy replied to Winters's attorney's letter on June 14, 2007:

We are pleased that we may be able to resolve this matter amicably. Our firm's Tax ID Number is [ ]. Please make the check payable to: 'Steve Sanders, as attorney for James Reppy.' Please send the release you would like our client to sign with the check and the affidavits from your client and Farmers concerning additional insurance, and so long as the release is substantially similar to the release in our March 16 letter and no other insurance covers your client for this incident, we will have our client execute the release and return it to you.

We do, however, want to clarify one additional issue. You mentioned in your letter that you assume that our client will indemnify various parties against any and all liability arising from any liens that may attach to the settlement funds. *At this time, we are not aware of any such liens, but in any event, our client does not agree to indemnify any party against any liability related to liens or subrogation rights.* If any health care providers have appropriately notified you pursuant to applicable law

that they are asserting liens in this matter, we understand that you may have an obligation to investigate their claims and protect their recovery rights, if appropriate. If this is the case, please let us know, and prior to accepting your tender of settlement funds, we will work with all lienholders that have complied with applicable law in asserting their liens to resolve those liens. If, on the other hand, you have not been notified of liens, James Reppy does not agree to indemnify any party in the event a lienholder attempts to assert a lien in the future.

*If you insist on this indemnification as a condition of settlement, we will consider it a rejection of our offer to settle this matter within the applicable policy limits, retract our offer, and proceed with litigation for the full amount of Mr. Reppy's damages, which may expose your client to a judgment in excess of his insurance policy limits.*

In response to this letter, counsel for Winters sent a letter dated June 22, 2007, to Reppy's counsel notifying Reppy's counsel of a $96,489.94 medical lien and requested confirmation from Reppy's counsel as to how the medical lien would be satisfied.

On July 9, 2007, counsel for Reppy wrote another letter to counsel for Winters stating, in pertinent part:

[Y]our letter of June 12, 2007 was not an acceptance of our March 16, 2007 settlement offer. In that letter you stated that 'our office' would be responsible to indemnify your client, his insurer, and your office for liability from any 'medical ... lien.' Our office is not going to indemnify your office, Farmers, or its insured for anything.

. . . .

Because of your letters and Farmers requiring our office and/or our client to indemnify all 'liens' ... we have no choice but to file suit against Gary Winters. Farmers failed to timely accept our settlement offer by meeting our conditions for a policy limit settlement.

On July 16, 2007, Reppy filed a petition for damages against Winters. On February 5, 2008, Winters filed a Motion to Dismiss and to Enforce Settlement ("Motion"). An evidentiary hearing on the Motion was held on November 26, 2008. On February 27, 2009, the trial court granted the Motion and entered judgment in favor of Winters. Reppy timely appealed.

### Standard of Review

At issue in this appeal is the factual question of whether an enforceable settlement agreement had been reached by the parties. In a court-tried case, we will affirm the judgment below if it is supported by substantial evidence, is not against the weight of the evidence, and does not erroneously declare or apply the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

### Analysis

#### Acceptance Varying from Offer

In Reppy's first point, he contends that the trial court erred in granting Winters's Motion because no settlement agreement was reached between the parties, due to the purported acceptance adding a term not present in Reppy's counsel's original offer. The issue of whether the parties entered into an enforceable settlement agreement is governed by contract law. *Ste. Genevieve Cnty. Levee Dist. # 2 v. Luhr Bros., Inc.*, 288 S.W.3d 779, 783 (Mo.App. E.D.2009) (citing *Emerick v. Mut. Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988)). Thus, for Winters to enforce a purported settle-

ment agreement with Reppy, he must first prove the essential elements of a contract: offer, acceptance, and consideration. *Id.* Essential to the creation of a valid settlement agreement is a meeting of the minds and a mutual assent to the essential terms of the agreement. *Id.*

■ Winters, as the party seeking to enforce the purported settlement, had the burden to prove the existence of a settlement by clear, convincing, and satisfactory evidence. *Id.* (citing *Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. banc 2007)). "Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true." *J.H. v. Brown*, 331 S.W.3d 692, 699 (Mo.App. W.D.2011) (internal quotation omitted).

■ " 'A [settlement] contract does not exist without a definite offer and a "mirror-image" acceptance.' " *Pride v. Lewis*, 179 S.W.3d 375, 379 (Mo.App. W.D. 2005) (citation omitted). "Any acceptance that includes new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer." *Id.* "The unequivocal acceptance of the offer is fundamental to the existence of a contract." *Id.*

In Reppy's counsel's March 16, 2007 settlement letter, he proposed that Reppy would accept the $30,000 per person policy limit in exchange for his release of all claims against Winters, with the additional requirement that Winters and his insurer provide notarized affidavits stating the total insurance covering Winters and the vehicle he was driving at the time of the accident. Although Winters's counsel's June 12, 2007 response generally accepted the proposal, "proceed[ing] forward with settlement" was *conditioned* on the "understanding that your office [i.e. Reppy's counsel's law firm] will be responsible to indemnify our client, his insurer, and our office for liability for any type of lien." [1] Reppy correctly asserts that indemnification by his counsel was not a term of Reppy's March 16, 2007 settlement offer; therefore, Winters's purported acceptance constituted a counter-offer. Indeed, Reppy's counsel's June 14 reply to the June 12 letter stated that *"[i]f you insist on this indemnification as a condition of settlement, we will consider it a rejection of our offer to settle this matter within the applicable policy limits, retract our offer, and proceed with litigation."*

■ We find that Winters did not establish by clear and convincing evidence that the parties had agreed to all of the essential terms of settlement as of the purported acceptance date of June 12, 2007, or thereafter. An enforceable contract requires that the parties mutually agree to all essential terms. *Arrowhead Contracting, Inc. v. M.H. Washington, L.L.C.*, 243 S.W.3d 532, 535 (Mo.App. W.D.2008). Negotiations or preliminary steps taken in an effort to come to an agreement on a particular term of settlement do not constitute a contract. *Id.* Because Winters's June 12, 2007 letter, by its plain language, added to Reppy's original offer a term requiring Reppy's counsel to indemnify Winters, his

---

1. This is not an insignificant additional term. It was Reppy, not Reppy's counsel, that incurred medical bills—and corresponding medical liens—for medical treatment. Yet, as a condition precedent to settlement, Winters's counsel required Reppy's counsel to undertake a financial obligation of medical lien indemnification to Winters, Winters's liability insurer, and Winters's counsel. While some attorneys might willingly agree to such a term and negotiate with the medical providers to resolve medical liens as a part of their service to their client, a trial court can hardly compel a non-party to a medical account to do so absent express agreement, statutory authority, or other legal authority.

insurer, and his attorney for any type of lien, it was not a mirror image of the original offer and was not an unequivocal acceptance. The trial court erred in concluding that there were no material deviations in Winters's purported acceptance. The trial court's judgment, therefore, finding that an enforceable settlement agreement had been reached, was against the weight of the evidence. Accordingly, Reppy's first point on appeal is granted.[2]

### Conclusion

We reverse the trial court's grant of Winters's Motion to Dismiss and to Enforce Settlement and remand this case back to the trial court for further proceedings not inconsistent with our ruling today.

LISA WHITE HARDWICK, Chief Judge, and ROBERT M. SCHIEBER, Special Judge, concur.

---

**2.** Because Reppy's first point on appeal is dispositive, we need not and do not address Point II of Reppy's appeal.