**John E. YOUNGS, Respondent,**

v.

**Noah CONLEY, a Minor, Stacey Conley, His Natural Mother, Jamie Conley, His Natural Father, Appellants.**

**WD 78515, WD 78601**

Missouri Court of Appeals, Western District.

OPINION FILED: May 10, 2016

MODIFIED July 5, 2016

Motion for Rehearing and/or Transfer to Supreme Court Denied July 5, 2016.

Application for Transfer Denied September 20, 2016

---

3. We need not decide, and take no position, on the appealability of the court's judgment had it conformed to Rule 74.01(b).

Before Division Two: Victor C. Howard, P.J., Thomas H. Newton, and Karen King Mitchell, JJ.

Thomas H. Newton, Judge

Mr. Noah Conley, Ms. Stacey Conley, and Mr. Jamie Conley (the Conleys) appeal the trial court's judgment enforcing a settlement agreement between the Conleys and Mr. John Youngs. We affirm.

The underlying personal injury claims of Mr. Noah Conley against Mr. Youngs arise from an accident in which Mr. Youngs's pickup truck struck Mr. Conley who was walking to school. At the time of the collision, Mr. Youngs was insured by a liability insurance policy issued by Viking Insurance Co. of Wisconsin/Dairyland Auto (Viking Insurance) with a policy limit of $25,000 per person. Viking Insurance sent a letter to counsel for Mr. Conley, stating, "[W]e are extending our per person bodily injury limits of $25,000 as settlement of the bodily injury claim presented by your client, Mr. Conley." Counsel for the Conleys sent a letter to Viking Insurance stating in part,

> Through our conversations, I understand that your insured maintains liability insurance limits of $25,000.00 per person, per incident. Please allow this letter to serve as a demand for the applicable insurance policy limits of $25,000.00. In exchange, my client(s) are willing to release and discharge your insured, John Youngs, for all past and future damages sustained in this motor vehicle accident.
>
> Please let me know as soon as possible if your insured is willing to accept the terms of the proposed settlement. This settlement demand will expire on January 31, 2014 at 12:00 pm CST. Please feel free to contact me with any questions or concerns.

In response, Mr. Youngs's counsel sent a letter dated January 27, 2014, stating,

> Your policy limits demand to Kelley Shook dated January 3, 2014 has been directed to my attention. Please allow this letter to confirm settlement of all past and future claims by minor Noah Conley against John M. Youngs with each party to bear its own costs and attorney's fees for payment of the sum of $25,000, which constitutes the applicable policy limits.

Your clients have agreed to execute a full release of all claims against John M. Youngs. We will prepare a release and circulate it to you for your review and approval. We need you to agree to identify all known, valid liens and to provide adequate lien protection. We need you to confirm the names of the minor's parents and the person who will serve as [next] friend. I will also need the minor's birthdate and social security number.

As you know, this settlement will require court approval. We will draft court approval documents and circulate them for your review. I assume we will file the settlement approval pleadings in Clinton County, Missouri.

Additionally, I will need you to provide us with lien information, any agreements you have reached with lien holders and the distribution of attorney's fees and case expenses you will be asking the court to approve.

If you have any questions, please let me know.

Mr. Youngs's counsel then sent an email to counsel for the Conleys on January 31, 2014, stating,

Thank you for returning my call earlier in the week. I wanted to confirm that you received my January 27, 2013 [sic] letter concerning the settlement of the minor's claim against John Youngs. When you get a chance to get the information I requested in the letter please pass it along so I can complete and circulate proposed settlement/release documents for your approval. If you have questions, please let me know.

On March 19, 2014, Mr. Youngs's counsel sent an email to counsel for the Conleys, stating, "I wanted to follow up with you with respect to the status of the information that I requested so that I could complete settlement documents." Counsel for the Conleys responded the same day, saying, "We are still working on resolving the lien."

On April 28, 2014, counsel for the Conleys sent an email to Mr. Youngs's attorney, stating, "In response to your letter of January, 2014, I am attaching confirmation (that I finally received) from the Department of the Army waiving their lien interest." This email also contained Mr. Conley's birthdate and social security number, confirmed the identification of Mr. Conley's parents, and indicated that Ms. Conley would act as Next Friend.

On June 9, 2014, counsel for the Conleys emailed Mr. Youngs's counsel, stating that he had not received a response to his April 28 email and requesting the proposed settlement paperwork. On June 12, 2014, Mr. Youngs's counsel replied, stating,

I have attached the proposed settlement documents that we have drafted. Please review and let me know if these are agreeable. I also need a W9 for your firm so that I can have the settlement check issued. I am not sure how you are handling the net settlement proceeds. Are you going to put them in a restricted bank account, structure the money or establish a conservatorship? I guessed given the amount that you may want to go with a restricted bank account. Let me know your thoughts so that we can get the settlement check ordered, get the pleadings on file and get a hearing date for the approval hearing.

If you have any questions, please let me know.

The proposed settlement documents included a General Release of All Claims Subject to Reservation of Specific Claims and Agreement to Defend, Indemnify and Hold Harmless (Proposed General Release and Agreement to Indemnify). This document included the following release language:

The UNDERSIGNED, Stacey Conley, as the natural mother and Next Friend of Noah Conley, and **Jamie Conley**, as the natural father of Noah Conley, for the sole consideration of Twenty Five Thousand and 00/100ths Dollars ($25,000.00) on behalf of **John E. Youngs, Sentry Insurance Group, Sentry Select Insurance Company, Viking Insurance Company of Wisconsin, and Dairyland Insurance Company (collectively "Released Parties")**, the receipt and sufficiency of which is hereby acknowledged, do hereby and for their heirs, executors, administrators, representatives, successors and assigns

**RELEASE, ACQUIT, AND FOREVER DISCHARGE**

**John E. Youngs, Sentry Insurance Group, Sentry Select Insurance Company, Viking Insurance Company of Wisconsin, and Dairyland Insurance Company** their employees, shareholders, officers, directors, agents, affiliated agents, representatives, brokers, affiliated brokers, freight brokers, heirs, executors, administrators, and all successor, predecessor, parent, subsidiary or affiliated corporations and entities of any kind and all other persons, firms, corporations, entities, associations, and partnerships, including but not limited to all other persons, firms, corporations, entities, associations, and partnerships for which the Released Parties may be vicariously liable or for which it is claimed were part of a joint venture or joint enterprise with the Released Parties from any and all claims, actions, causes of action, demands, rights, damages, costs, expenses, and compensation whatsoever, which the undersigned now have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen injuries and damages, and the consequences which have or may in the future result from the June 20, 2013 Accident **EXCEPT THAT** the undersigned expressly reserve the following claims:

1. All claims for UM/UIM coverage against insurance carriers that provide coverage that is applicable to the Accident referenced herein and/or the damages referenced herein.

The agreement further provided,

**THE UNDERSIGNED** further agree to defend, indemnify and hold the Released Parties harmless from any and all claims or actions involving claimed hospital liens, doctor liens, medical liens, Medicaid liens, Medicare liens, child support liens, attorney liens, work comp liens, judgment liens, insurance subrogation liens and/or any other claims or liens asserted by any individual or entity making claim to the proceeds of the above-referenced settlement.

**THE UNDERSIGNED and their counsel** further agree that the only known, valid claims/liens for which they have been provided notice or for which they have become aware are as follows:

1. TRICARE, Claim of Noah Conley, Army Claim # 14–171–A0051. The Government has agreed to waive this claim, providing that all funds intended for TRICARE will go directly to Noah Conley ...

**THE UNDERSIGNED and their counsel** further agree that all known, valid claims/liens asserted against these settlement proceeds will be paid and/or fully negotiated, discharged and satisfied from the settlement proceeds issued on behalf of the Released Parties and that funds will be adequately withheld in trust by the undersigned counsel sufficient to pay and fully satisfy such items before any remaining settlement pro-

ceeds are distributed to the undersigned and/or their counsel or to any other person or entity.

\* \* \*

**THE UNDERSIGNED and their counsel** further agree to defend, indemnify and hold the Released Parties harmless from any and all failures to identify known, valid claims/liens; from any and all failures to discharge and fully satisfy all known, valid claims/liens; from any failures to withhold sufficient funds in trust to satisfy known, valid claims/liens before remaining settlement proceeds are distributed and from any and all claims or actions involving attorney's fee liens.

Mr. Youngs's counsel sent an email to counsel for the Conleys on June 27, 2014, requesting feedback on the proposed settlement documents. Mr. Youngs's counsel sent an additional email on June 29, 2014, stating,

You made a policy limits demand to resolve all claims of minor Noah Conley against John M. Youngs on [January] 3, 2014 and left your demand open until January 31, 2014 at 12:00 p.m. We accepted your demand and extended the $25,000 policy limits and confirmed settlement by way of letter dated January 27, 2014. We requested an identification of all know [sic], valid liens as well as other information needed to draft settlement documents. There was a delay while you negotiated the lien being asserted by the Department of the Army and gathered other information.

Thereafter, we incorporated the information you provided and drafted and circulated court approval documents and a release in an attempt to memorialize the terms of this settlement. We circulated these documents to you for your review and approval by way of email correspondence dated June 12, 2014. We followed up with you last week about the status of these documents.

Like in every case, if there is any provision or language in the draft release that you would like to change or if you have alternative proposed language that you believe better memorializes our settlement please let us know. We would like to get these documents finalized and submitted to the Court.

In drafting the release, we wanted to make sure that you and your client were permitted to reserve all claims that you would like to retain the ability to pursue, which is why we drafted the release to allow a specific, enumerated reservation of claims. We assumed based on our prior conversations that you wanted to reserve all UM/UIM claims and include that in the draft document. If you want to specify any additional claims beyond claims against John M. Youngs, please let us know and we will be happy to outline those claims in the release document.

We appreciate your assistance in obtaining court approval of this settlement. If you have any questions, please let us know.

On June 30, 2014, counsel for the Conleys sent an email to Mr. Youngs's counsel, stating,

As you know, the parties to be released are a material term to any agreement to settle. Contrary to Plaintiff's demand, which very clearly spelled out who Plaintiff would agree to release and discharge, the insurer chose to include itself (and affiliates) as "Released Parties" in the release document. While I do not know why the insurer varied a material term, thus presenting a counter offer, it is unacceptable to Plaintiff, and Mr. Youngs (and his insurer) may consider the counter offer rejected. We will proceed with litigation.

Mr. Youngs's counsel replied on July 1, 2014, stating,

We are writing in response to your email correspondence dated June 30, 2014. We disagree with your analysis.

First, the release of an insured acts to release the liability insurance carrier from any obligation related to alleged negligent acts or omissions of that insured. In other words, a third party plaintiff retains no claim against the liability insurance company of an insured once claims against the insured have been released. [Citation omitted]

Second, as you know, it is routine and customary practice to include the insurance carrier that is paying settlement funds under a given policy as a released party in settlement documents that are drafted to memorialize a settlement agreement.

Since the release of the insured acts to release the insurance carrier from any claim that a plaintiff may advance, the same result follows regardless of whether or not the insurance carrier is listed as released party. Therefore, we are happy to remove the insurance company as a named released party in the release. This is <u>not</u> a material term and does <u>not</u> alter our settlement agreement.

The release that we circulated was intended to memorialize our settlement agreement in accord with your offer of January 3 and our acceptance of January 27. Please provide us with any revisions you believe are needed to accurately describe our settlement.

Counsel for the Conleys replied on July 1, 2014, stating, "Thank you for your letter, but I respectfully disagree. Plaintiff intends to proceed with filing a lawsuit against Mr. Youngs in the very near future." On July 16, 2014, Mr. Youngs's counsel sent a letter to counsel for the Conleys explaining the events of the settlement formation including the original offer, the acceptance, and the information requested for production of the settlement documents. The letter concluded,

We have an offer, acceptance and consideration. We have a meeting of the minds and an enforceable settlement agreement. If you do not believe that the release we have proposed adequately conforms to our settlement agreement, we are willing to take out the draft language that you have stated you do not believe is in conformity with the agreement. We have previously requested that you provide alternative language that you believe is in conformity with our settlement agreement.

Mr. Youngs filed a petition for enforcement of settlement on July 2, 2014. Mr. Conley, through his mother, filed his petition for damages on July 8, 2014. Plaintiff's motion to consolidate the cases was filed on August 25, 2014. During a December 18, 2014, hearing, the cases were consolidated and the parties realigned. Both parties presented arguments via counsel, and multiple exhibits were presented without objection. After considering the parties' pleadings and briefing, legal authorities, exhibits A–I, and counsels' oral arguments, the hearing court found that a valid settlement existed between the parties.

Ms. Conley informed the court during an April 1, 2015, hearing that Mr. Conley was eighteen. The trial court directed the parties to return on April 10, 2015, for an additional hearing to complete execution of the settlement documents. During the April 10, 2015, hearing, the release was signed and counsel for Mr. Youngs tendered a check in the amount of $25,000 to counsel for the Conleys. The court then entered its order of dismissal with prejudice. This appeal follows.

The Conleys argue that the trial court erred in ruling that an enforceable agreement existed between the parties because Mr. Youngs's alleged acceptance created a counteroffer by including additional terms. The Conleys argue that, because no enforceable agreement existed, the court erred in finding that Mr. Youngs accepted the Conleys' settlement offer, sustaining the motion to enforce settlement agreement, ordering Noah and Ms. Conley to execute the release, and dismissing the Conleys' claims with prejudice. We disagree.

■■■ We review the trial court's judgment pursuant to *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), and will sustain it unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Woods ex rel. Woods v. Cory*, 192 S.W.3d 450, 458 (Mo. App. S.D. 2006). "A claim that there is no substantial evidence to support the judgment or that the judgment is against the weight of the evidence necessarily involves review of the trial court's factual determinations." *Pearson v. Koster*, 367 S.W.3d 36, 43 (Mo. banc 2012). "Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the circuit court's judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Circuit courts are free to believe any, all, or none of the evidence presented at trial." *Id.* at 200. Under Rule 73.01(c) " 'all fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached.' " *Id.* Moreover,

[a]n appellate court will set aside a judgment on the grounds that it is against the weight of the evidence with caution and only with the firm belief that the judgment is wrong. Weight of the evidence refers to the evidence's weight in probative value or its effect in inducing belief, not its quantity. Further, the fact there is evidence of testimony in the record which may have supported a different conclusion than that reached by the trial court does not demonstrate that the judgment is against the weight of the evidence. An appellate court independently evaluates the trial court's application of the law in determining whether there was a misapplication of the law.

*Pride v. Lewis*, 179 S.W.3d 375, 378–79 (Mo. App. W.D. 2005) (internal citations omitted). The same standard of review applies in all types of court-tried cases, regardless of the burden of proof at trial. *Ivie*, 439 S.W.3d at 199. Agreements to settle are enforceable by motion. *B–Mall Co. v. Williamson*, 977 S.W.2d 74, 77 (Mo. App. W.D. 1998); *Woods*, 192 S.W.3d at 457. The party seeking specific performance of the agreement has the burden of proving the claim by clear and convincing and satisfactory evidence. *Id.*

■■■ "The issue of whether the parties entered into an enforceable settlement agreement is governed by contract law." *Reppy v. Winters*, 351 S.W.3d 717, 720 (Mo. App. W.D. 2011) (internal citations omitted). To enforce a purported settlement, one must prove the essential elements of a contract: offer, acceptance, and consideration. *Id.* at 721. A valid settlement agreement also requires "a meeting of the minds and a mutual assent to the essential terms of the agreement." *Id.* Whether a term is material "depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Matthes v. Wynkoop*, 435 S.W.3d 100, 107 (Mo. App. W.D. 2014) (quoting *Shellabarger v. Shellabarger*, 317 S.W.3d 77, 82 (Mo. App. E.D. 2010)). "Negotiations or preliminary steps taken in an

effort to come to an agreement on a particular term of settlement do not constitute a contract." *Reppy*, 351 S.W.3d at 721. "A mutual agreement is reached when 'the minds of the contracting parties [ ] meet upon and assent to the same thing in the same sense at the same time.'" *Grant v. Sears*, 379 S.W.3d 905, 916 (Mo. App. W.D. 2012) (citations omitted). "A meeting of the minds occurs when there is a definite offer and an *unequivocal acceptance*." *Id.*

▮▮▮▮ "[T]he party seeking to enforce the purported settlement [has] the burden to prove the existence of a settlement by clear, convincing, and satisfactory evidence." *Reppy*, 351 S.W.3d at 721. "'Evidence is clear and convincing if it instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true.'" *Id.* (quoting *J.H. v. Brown*, 331 S.W.3d 692, 699 (Mo. App. W.D. 2011)).

▮▮▮▮ "'A contract does not exist without a definite offer and a "mirror-image" acceptance.' Any acceptance that includes new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer." *Pride*, 179 S.W.3d at 379 (internal citations omitted). "A determination of whether an offer has been accepted depends upon what is actually said and done; it does not depend on the understanding or supposition of one of the parties." *Grant*, 379 S.W.3d at 917 (citations omitted). Silence or inaction generally cannot establish acceptance of an offer and may not be translated into acceptance simply because the offeror attaches that effect to it, absent a duty to speak. *Pride,* 179 S.W.3d at 379. "Inaction or silence does not evidence any intention of the offeree." *Id.*

▮▮ When evaluating a claim that a judgment is against the weight of the evidence or has no substantial evidence to support it, we must review the trial court's factual findings. *Pearson*, 367 S.W.3d at 43. We will set aside a judgment on these grounds only if we firmly believe it is wrong. *Pride*, 179 S.W.3d at 378. In its judgment, the trial court clearly outlined findings of fact highlighting the offer and timely acceptance including the material terms. These findings were supported by evidence of the parties' communications further confirming and acting in conformity with the settlement.

▮▮ The parties' communications contain the essential elements of a contract. According to the record, on January 3, 2014, through counsel, the Conleys offered to release and discharge Mr. Youngs for all past and future damages sustained in the motor vehicle accident in exchange for the applicable insurance policy limit of $25,000. On January 27, 2014, counsel for Mr. Youngs accepted the settlement offer by letter, saying "[p]lease allow this letter to confirm settlement of all past and future claims by minor Noah Conley against John M. Youngs with each party to bear its own costs and attorney's fees for payment of the sum of $25,000, which constitutes the applicable policy limits." Therefore, as shown by the evidence, the parties' settlement communications clearly contain a definite offer and an acceptance. The Conleys argue that the January 27th communication constitutes a counteroffer instead of an acceptance because it requests information identifying all valid known liens and that the Conleys provide adequate lien protection. Although the January 27th communication requests additional information, the actions of both parties indicate that a settlement including the material terms set forth in the January 3 offer exists. In addition to the January 27th ac-

ceptance letter, counsel for Mr. Youngs sent two emails further confirming settlement. The next communication received from the Conleys' counsel indicated their efforts to comply with Mr. Youngs's request for lien information.[1] Furthermore, on April 28, 2014, counsel for the Conleys confirmed the lien waiver and provided the additional information requested by Mr. Youngs's counsel. The actions in compliance with the requests made by Mr. Youngs's counsel suggest that the Conleys' counsel acknowledged that a mutual agreement existed. Based on the parties' interactions, sufficient evidence supports the trial court's determination that an enforceable settlement agreement existed.

 The Conleys rely on the language in the Proposed General Release and Agreement to Indemnify to support their argument that the parties' communications resulted in an unaccepted counteroffer instead of an enforceable settlement agreement. The Conleys state that the Proposed General Release and Agreement to Indemnify confirms the existence of a counteroffer because the release includes language indemnifying the insurance companies, while the original settlement offers to indemnify only Mr. Youngs.[2] Although the parties to an agreement are clearly material in this case, the inclusion of the insurance carriers is not material to the agreement between the Conleys and Mr. Youngs. Generally, "an injured party cannot proceed in a direct action against an insurance company providing liability coverage for an insured who allegedly caused the harm sustained by the claimant." *Des-*

*mond v. Am. Ins. Co.*, 786 S.W.2d 144, 145 (Mo. App. W.D. 1989). Therefore, the insurer will be released regardless whether the insurer is included in the release. Furthermore, the materiality of a term depends on the parties' subsequent conduct. *Matthes,* 435 S.W.3d at 107. After the Conleys requested that Mr. Youngs remove the insurance carriers from the release agreement, Mr. Youngs agreed to this request. Thus, the parties' willingness to accommodate the Conleys' request and the lack of material effect of the requested indemnity change shows that the inclusion of the insurance carriers is not a material term and does not suggest a counteroffer.

In addition, at the evidentiary hearing on Mr. Youngs's motion to enforce settlement, the only objections asserted by counsel for the Conleys to the proposed release were for the inclusion of the insurance carriers as released parties and the lien identification/indemnification language. In response to each objection, Mr. Youngs's counsel agreed to omit the contested language. Based on the parties' actions, the trial court held that the inclusion of the insurance carriers' names and the language regarding lien identification and indemnification were not material and, therefore, do not constitute a counteroffer.

The Conleys argue that the trial court incorrectly relied on *Matthes v. Wynkoop* and focus on an evidentiary issue in that case. Although *Matthes* does involve an evidentiary challenge, the main point on appeal is on all fours with the issue here. In *Matthes*, the first point on appeal was

---

1. The email from the Conleys' counsel states: "We are still working on resolving the lien."

2. The Conleys also suggest that the ambiguity of Mr. Youngs's request for the Conleys to obtain "adequate lien protection" allowed them to include indemnification provisions not included in the original settlement offer. Although they stress that this language al-

lowed Mr. Youngs to include information in the proposed release not discussed during settlement negotiations, they fail to provide their interpretation of "adequate lien protection" to support their argument that this information was material to the settlement and created a counteroffer.

Matthes's assertion "that the trial court erred in granting Defendants' motion to dismiss and to enforce settlement because no settlement agreement was reached in that Defendants' purported acceptance (the February 9, 2011 letter and release) of his offer to settle for $17,000 contained new terms and, therefore, was not an acceptance, but a counteroffer." *Matthes*, 435 S.W.3d at 106. The court determined that testimony (1) from Matthes's settlement counsel regarding his participation in settlement negotiations, (2) of the resolution counsel reached with the Defendants' insurer, (3) about the determined settlement amount, and (4) that settlement counsel was under the impression that the insurance company made a definite settlement offer, was correctly admitted. *Id.* at 108. Therefore, the *Matthes* court determined that the evidence was sufficient to support the trial court's determination that the parties entered into a valid settlement agreement. *Id.* at 110. Here, the court was presented with documentary evidence showing the participation of both parties in the settlement negotiations, an unequivocal acceptance, and a determined settlement amount. The trial court properly relied on *Matthes* to support its ruling.

The Conleys also argue that the trial court's judgment directly contradicts *Grant v. Sears*, *Reppy v. Winters*, and *Pride v. Lewis*. *Grant* involved an offer to settle, a counteroffer, and an alleged acceptance of that counteroffer. The trial court ordered the execution of a valid settlement and dismissed the case with prejudice. *Grant*, 379 S.W.3d at 912. In *Grant*, the plaintiff sent a demand for the $25,000 policy limit and requested an affidavit that no other insurance coverage existed. *Id.* at 908. The defendant's insurer responded with a clear acceptance and a request, stating that "we are on notice of liens from Medicaid and First Recovery Group. Please provide their final lien letters.

Please verify whether or not your client is a Medicare recipient." *Id.* at 908. The plaintiff responded that "we hereby accept the policy limits of $25,000.00." *Id.* at 909. The plaintiff's response, however, remained silent as to the lien request. *Id.* at 909. This Court held that "the trial court erroneously characterized the silence in [plaintiff's] January 7, 2010 letter as acceptance of terms added by American Family's December 21, 2009 letter." *Id.* at 917. Contrary to the Conleys' assertion, the principle applied in *Grant* does not undercut the trial court's holding in this case. Here, the record shows that, through counsel, the Conleys did not remain silent on the lien request; rather, they complied with it by providing the information Mr. Youngs requested. In addition, the lien requests were objected to for the first time during the evidentiary hearing, a request Mr. Youngs accommodated. Even if the trial court had erroneously characterized the Conleys's response to the lien request, this was not material to the offer or acceptance. Therefore, the trial court's ruling does not contradict *Grant*.

In *Reppy*, the defendant's attorney attempted to accept the plaintiff's offer with the conditional statement, "on the 'understanding that your office [i.e. Reppy's counsel's law firm] will be responsible to indemnify our client, his insurer, and our office for liability for any type of lien.'" *Reppy*, 351 S.W.3d at 721 (footnote omitted). This Court held that the addition of a term not included in the original offer destroyed the mirror-image acceptance, and thus an enforceable settlement agreement did not exist. *Id.* at 722. *Reppy* is distinguishable, however, because there the acceptance was specifically conditioned on the acceptance of the additional term. *Id.* at 721. In our case, the request regarding the indemnification provisions and adequate lien protection was not a condition of

acceptance, and this was demonstrated by Mr. Youngs's accommodation of the Conleys' objections to the proposed language involving these matters during the evidentiary hearing. Because the conditional language in *Reppy* was, by contrast, a material term and the information requested in this case is immaterial in light of the parties' actions, the trial court's ruling is not inconsistent with *Reppy*.

Finally, in *Pride*, a claim for breach of an alleged real estate contract is at issue. *Pride*, 179 S.W.3d at 377. The relevant point on appeal was whether the change to the closing date equated to a counteroffer that was never accepted. *Id.* at 377, 379. The court in *Pride* explains that the buyer's silence in response to the counteroffer containing the altered closing date cannot be interpreted as acceptance. *Id.* at 381. *Pride* is distinguishable for reasons similar to those expressed in our previous discussion of *Reppy*. Because the parties' actions do not suggest silence on the terms and because it is clear from the timing of and response to objections on these issues that they are immaterial, the trial court's ruling is not inconsistent with *Pride*. This point is denied.

### Conclusion

Based on the evidence presented, we affirm the judgment of the trial court holding that a valid and enforceable settlement agreement exists between the parties.

Howard, P.J. and Mitchell, J. concur.