

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| HANNAH STICKLER AND MOLLY STICKLER, | ) ) | **CORRECTED OPINION** **APRIL 13, 2022** |
| | ) | |
| Respondents, | ) | |
| | ) | |
| v. | ) | WD84618 |
| | ) | |
| AUSTIN MCGINNIS, | ) | Opinion filed: April 12, 2022 |
| | ) | |
| Appellant. | ) | |

**APPEAL FROM THE CIRCUIT COURT OF ANDREW COUNTY, MISSOURI**
**THE HONORABLE KATE H. SCHAEFER**

Special Division: W. Douglas Thomson, Presiding Judge,
Gary D. Witt, Judge and Zel Fischer, Special Judge

Austin McGinnis ("McGinnis") appeals from the judgment of the Circuit Court of Andrew County denying his motion to enforce settlement agreement against Hannah and Molly Stickler (collectively, "the Sticklers"). In his sole point on appeal, McGinnis contends that the trial court erred in denying his motion to enforce settlement agreement because the parties had reached a settlement in that all of the essential elements of a contract existed. Finding no error, we affirm.

## Factual and Procedural History

On June 21, 2020, Mark Stickler ("Decedent") died as a result of a motor vehicle collision involving McGinnis. The Sticklers are the only two children of Decedent. At the time of the collision, McGinnis was insured by at least one liability insurance policy issued by State Farm Insurance Company ("State Farm") which provided bodily injury limits of $250,000.00 per person or $500,000.00 per accident.

On September 10, 2020, the Sticklers, through their attorney, sent a settlement demand letter ("Stickler Offer") to McGinnis' insurer, State Farm, pursuant to Section 537.058.[1] The Stickler Offer read, in relevant part:

> Please be advised that I now have the authority of . . . my clients . . . to submit the following time-limited demand as and for settlement and full unconditional release of your insured, . . . McGinnis, from all present and future liability for causing the death of their father.
>
> * * * * *
>
> We . . . will issue corresponding/appropriate releases from each party as soon as you document and confirm any/all applicable policy coverage limits as requested and confirm that you are agreeing to pay same. We will also agree to indemnify and hold State Farm Insurance and . . . McGinnis harmless from any/all liens existent at the time of settlement.
>
> As and for [the Sticklers'] statutory damages accruing from the wrongful death of their father, [Decedent], **we will accept a total sum representing the aggregate combined total of limits of any/all applicable policy coverages** insuring . . . McGinnis personally. This is an offer of unconditional release for defendant . . . McGinnis from all present and future liability for the above-referenced occurrence per RSMo. § 537.060.
>
> As such, this is a demand within each applicable and respective policy's coverages in effect on the day of the subject occurrence, June 21, 2020. **Our only other express condition precedent before considering anything less in pre-litigation settlement is that I be allowed to**

---

[1] All references to Sections are to the Revised Statutes of Missouri (2018), unless otherwise indicated.

**take a recorded phone interview with . . . McGinnis regarding any/all possible policies of insurance he may have had** covering him on June 21, 2020. This is an essential, and reasonable, request as this claim would normally result in a $2,000,000+ award at trial and I need to verify such information from you re: purported limitations of coverage.

**Once I have been afforded the opportunity to verify any/all possible policies of coverage we will accept said total amount conditioned upon the following:** (1) the delivery of certified copies of each applicable policy, in its entirety, including declaration pages for each with affidavits attesting that these are the only policies covering the subject claims and in effect of the above-referenced date; and (2) your acceptance conveyed to us, in writing, by 5:00 p.m. on October 13, 2020.

(emphasis added). On September 22, 2020, prior to receiving a reply from State Farm, the Sticklers followed up with the insurer, stating, in relevant part:

. . . . I have now had time to review the file and before I talk to you I would ask that you provide "the certified policy documents and Declaration Pages" of the "several household policies" you promised to send me on July 8, 2020, as soon as you obtained them. To date, I have not received such documents.

Once I've had a chance to review those, I'll be happy to talk with you about whether all of our settlement terms have been met regarding releasing . . . McGinnis.

On September 23, 2020, State Farm responded to the Stickler Offer ("State Farm's Response"), stating:

I am writing in response to your time limited [Stickler Offer] dated September 10, 2020, in which you have submitted a demand for the policy limits of $250,000 for the daughters of [Decedent], [the] Stickler[s]. Please accept this as our response to your demand.

This letter will confirm our acceptance of your demand for the policy limits of $250,000 in full settlement of your client's injury claim. This settlement is inclusive of all damages, known and unknown, and any liens, assignment or statutory rights of recovery.

In addition to the demand for the Policy limits, we acknowledge your request for confirmation of any additional coverages for . . . McGinnis by

3

way of a recorded affidavit as well as a signed affidavit. We have informed . . . McGinnis of this request and he will advise if he agrees to this condition. Upon . . . McGinnis' agreement to complete the recorded and written affidavit, we ask that you provide us with a copy of the affidavit for which he should sign and we ask for your preference on how and when to obtain the recorded affidavit.

In the meantime, we previously provided you with the certified policy documents for the insurance coverage for the 2013 GMC Sierra that was involved in this accident. These documents were sent to your office on July 16, 2020. We have confirmed that there were other automobiles in . . . McGinnis' household that were also insured at the time of this loss, however, the use and operation of the 2013 GMC Sierra would not be covered under the household policies with State Farm and therefore there would be no additional Bodily Injury coverages applicable. We will provide you with the certified Declarations pages for the household policies upon receipt. Please note that the policy book and endorsement that were previously sent would apply also to the additional Declaration pages that are sent. In the state of Missouri, State Farm lists only one vehicle on a policy.

That same day, the Sticklers replied to State Farm's Response, stating:

Thanks for your letter of today's date. My demand wasn't for $250,000; it was for "the aggregate combined total limits of any/all applicable policy coverages insuring . . . McGinnis".

And it was also only as to an unconditional release of . . . McGinnis and no other parties, upon my review of all possible policies of coverage for him, which you have now agreed to provide me the dec[laration] sheets of and a recorded phone interview with him regarding such coverages, if any.

I will await delivery of each of those dec[laration] sheets . . . .

On November 12, 2020, after having interviewed McGinnis, the Sticklers sent

a letter to State Farm, which stated in part:

Thank you for the opportunity to telephonically interview your insured tortfeasor, . . . McGinnis, regarding potential liability coverage(s) and for providing a copy of the transcript.

* * * * *

4

It is also clear that [McGinnis] is a covered driver, both on his 2013 GMC Denali pickup and also as a permissive/regular driver on the 2005 GMC K1500 pickup owned by his mother, Rhonda McGinnis. That vehicle appears to also have $250,000 per person liability coverage. Therefore, demand for full settlement and release herein of . . . McGinnis is made in the amount of FIVE HUNDRED THOUSAND DOLLARS ($500,000.00). Upon receipt of such amount we will fully release . . . McGinnis and State Farm as to any/all coverages for . . . McGinnis.

After the parties exchanged several emails providing their stance on whether an agreement had been made, McGinnis (through counsel) sent the Sticklers a letter on December 11, 2020, confirming that a settlement had been reached as a result of State Farm's Response on September 23, 2020, which "accepted" the terms of the September 10, 2020, Stickler Offer. Enclosed with the December 11, 2020, letter was a proposed release for the claim against McGinnis for a settlement of $250,000. The December 11, 2020, letter read, in relevant part:

. . . State Farm did not make an offer of $250,000.00, but in fact accepted your offer to settle the wrongful death claim against . . . McGinnis for the applicable $250,000.00 policy limit.

Regardless, I advised I would send you a proposed Release, which I am enclosing.

\* \* \* \* \*

Again, I am not coverage counsel for State Farm but represent only . . . McGinnis. However, I have reviewed the policy regarding the 2005 GMC K1500, and clearly that policy does not provide coverage to my client regarding the accident at issue. Therefore, the only applicable policy is the one insuring the 2013 GMC vehicle owned by my client, and involved in the accident. Hence, State Farm did accept your offer to pay all "applicable limits" – which again is the $250,000.00 policy limit on the vehicle involved in the accident.

On January 5, 2021, the Sticklers filed a petition for damages against McGinnis, who subsequently filed a motion to enforce settlement ("Motion"). On May

5

13, 2021, an evidentiary hearing was held on McGinnis' Motion. At the hearing, the Sticklers argued "there was no mirror-image acceptance by the defendant in this case" and, as a result, State Farm's Response on September 23, 2020, was a counter-offer which was rejected. Specifically, the Sticklers contended that State Farm's Response advising that the policy limits were $250,000 was, without further information, a failure to provide mirror-image acceptance.

On June 21, 2021, the trial court denied the Motion in its amended order and judgment, finding that the "parties never entered into a valid and enforceable settlement agreement" in that the "subsequent conduct of the parties and the subsequent objective manifestations of the parties shown through the correspondence of the parties . . . confirms these parties never had a meeting of the minds as to the three basic requirements of a contract: offer, acceptance, and consideration." The trial court certified the case as a partial final judgment pursuant to Rule 74.01(b).

McGinnis appeals.

**Standard of Review**

"In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law." *Beck v. Shrum*, 18 S.W.3d 8, 10 (Mo. App. E.D. 2000) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)). "We are concerned primarily with reaching a correct result, and thus we do not need to agree with the reasoning of the trial court in order to affirm the result." *Id*. (citing *McDermott v. Carnahan*, 934 S.W.2d 285, 287 (Mo. banc 1996)).

6

**Analysis**

In his sole point on appeal, McGinnis argues that the trial court erred in denying his Motion because the parties had reached a settlement as to the Sticklers' claim in that all essential elements of a contract existed. Specifically, McGinnis contends that, in response to the Stickler Offer, State Farm's Response constituted an unequivocal, mirror-image acceptance. We disagree.

"A motion to compel settlement adds to a pending action a collateral action for specific performance of the settlement agreement." *Id.* (citing *McKean v. St. Louis County*, 964 S.W.2d 470, 471 (Mo. App. E.D. 1998)). "The party requesting specific performance of a settlement agreement has the burden of proving, by clear, convincing and satisfactory evidence, his or her claim for relief." *Id.* (citing *Payne v. E&B Carpet Cleaning, Inc.*, 896 S.W.2d 650, 651 (Mo. App. E.D. 1995)). "Evidence is clear and convincing if it 'instantly tilt[s] the scales in the affirmative when weighed against the evidence in opposition, [such that] the fact finder's mind is left with an abiding conviction that the evidence is true.'" *J.H. v. Brown*, 331 S.W.3d 692, 699 (Mo. App. W.D. 2011) (quoting *In the Interest of T.S.*, 925 S.W.2d 486, 488 (Mo. App. E.D. 1996)). "The trial court is afforded much discretion in deciding whether to award the equitable remedy of specific performance." *Beck v. Shrum*, 18 S.W.3d at 10 (citing *McBee v. Gustaaf Vandecnocke Revocable Trust*, 986 S.W.2d 170, 173 (Mo. banc 1999)).

"Courts of this state have held that whether there was a meeting of the minds is a question of fact for the trial court to decide." *Women's Care Specialists, LLC v.*

*Troupin*, 408 S.W.3d 310, 316 (Mo. App. E.D. 2013) (quoting *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 368 (Mo. App. S.D. 2003)). "We defer to the findings of fact in a court-tried case, but we make an independent evaluation of the conclusions of law the trial court draws from its factual findings." *Id.*

"Contract law governs the question of whether the parties entered into an enforceable settlement agreement." *St. Louis Union Station Holdings, Inc. v. Discovery Channel Store, Inc.*, 301 S.W.3d 549, 552 (Mo. App. E.D. 2009) (citing *Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 518 (Mo. banc 1988)). "[T]o establish a legal, valid settlement agreement, one must prove the essential elements of a contract: offer, acceptance and consideration." *Id.* (citing *Tinucci v. R.V. Evans Co.*, 989 S.W.2d181, 184 (Mo. App. E.D. 1998)). More specifically, "[a] contract does not exist withouta definite offer and a 'mirror-image' acceptance.'" *Pride v. Lewis*, 179 S.W.3d 375, 379 (Mo. App. W.D. 2005) (quoting *Volker Court, LLC v. Santa Fe Apartments, LLC*, 130S.W.3d 607, 611 (Mo. App. W.D. 2004)). "Any acceptance that includes new or variantterms from the offer presented amounts to a counter-offer and a rejection of the original offer." *Id.* (citing *Tirmenstein v. Cent. States Basement & Found. Repair, Inc.*, 148 S.W.3d 849, 851 (Mo. App. E.D. 2004)). "A determination of whether an offer has been accepted depends upon what is actually said and done; it does not depend on the understanding or supposition of one of the parties." *Youngs v. Conley,*505 S.W.3d 305, 314 (Mo. App. W.D. 2016) (quoting *Grant v. Sears*, 379 S.W.3d 905, 917 (Mo. App. W.D. 2012)).

8

"A valid settlement agreement also requires 'a meeting of the minds and a mutual assent to the essential terms of the agreement.'" *Id.* at 313 (quoting *Reppy v. Winters*, 351 S.W.3d 717, 720 (Mo. App. W.D. 2011)). "A meeting of the minds occurs when there is a definite offer and an *unequivocal acceptance.*" *Id.* at 314 (quoting *Grant v. Sears*, 379 S.W.3d at 916) (emphasis in original). "A mutual agreement is reached when 'the minds of the contracting parties[] meet upon and assent to the same thing in the same sense at the same time.'" *Youngs v. Conley*, 505 S.W.3d at 314. "A court determines a meeting of the minds 'by looking to the intention of the parties as expressed or manifested in their words or acts.'" *Women's Care Specialists, LLC v. Troupin*, 408 S.W.3d 310, 316 (Mo.App. E.D. 2013) (quoting *J.H. v. Brown*, 331 S.W.3d at 702).

We note that neither party challenges the validity of the offer. Hence, the question is simply whether there was a valid acceptance and a meeting of the minds. Clearly, there were not.

The State Farm Response was not a mirror-image acceptance of the Stickler Offer's terms. Rather, having received the Stickler Offer, State Farm seized the opportunity to "accept" based upon its *own* determination that only a single policy of insurance covered McGinnis. State Farm's Response "confirmed that there were other automobiles in . . . McGinnis' household that were also insured at the time of this loss," but determined, *on its own*, that the 2013 GMC Sierra would not be covered under such policies. This is contrary to the Stickler Offer, which clearly made their demand contingent upon investigating this fact themselves by both interviewing

9

McGinnis and reviewing certified copies of the "any/all" potentially applicable insurance policies. State Farm's Response notified the Sticklers of its "acceptance of your demand for the policy limits of $250,000 in full settlement of your client's injury claim," which is itself a mischaracterization of the Stickler Offer. By making its own determination of coverage and folding this determination into its "acceptance," *prior to* allowing the Sticklers an opportunity to review all policies of insurance and interview McGinnis, State Farm's Response varied the terms of the offer in attempting to render an acceptance.

We acknowledge that State Farm later allowed the Sticklers to interview McGinnis and later provided copies of the policies. However, McGinnis' assertion is that a settlement agreement was forged by the State Farm Response, before the interview of McGinnis and receipt of the declaration sheets by the Sticklers. Notably, the State Farm Response did not definitively agree to an interview of McGinnis, but rather it stated they would confer with McGinnis about his willingness to do so. Here, the crux of the issue is that at the time State Farm asserts that an agreement was forged, the Sticklers still desired to determine what policies they believed afforded coverage. Until the Sticklers were allowed to do so in the manner requested, the parties did not have an offer and acceptance and were not in a position to forge an agreement. At best, State Farm's Response amounted to a counter-offer because it varied the terms of the offer by determining coverage for the Sticklers, rather than allowing the Sticklers to do so themselves. *Pride v. Lewis*, 179 S.W.3d at 379 ("Any

acceptance that includes new or variant terms from the offer presented amounts to a counter-offer and a rejection of the original offer.").

Our finding that the parties' communications did not amount to a settlement agreement is further demonstrated by the clear absence of a meeting of the minds. Here, on September 23, 2020, the very same day the Sticklers received State Farm's Response, the Sticklers replied, stating: "Thank you for your letter of today's date. My demand wasn't for $250,000; it was for 'the aggregate combined total limits of any/all applicable policy coverages insuring . . . McGinnis.'" The lack of a meeting of the minds is further evidenced by the Sticklers later demand for the limits of coverage under two policies of insurance and the continued insistence by McGinnis' insurance carrier that a settlement had previously been reached. "A court determines a meeting of the minds 'by looking to the intention of the parties as expressed or manifested in their words or acts.'" *Women's Care Specialists, LLC v. Troupin*, 408 S.W.3d at 316 (quoting *J.H. v. Brown*, 331 S.W.3d at 702). Here, thecorrespondence between the parties made it clear they simply did not have an agreement. Further, "[a] mutual agreement is reached when 'the minds of the contracting parties [] meet upon and assent to the same thing in the same sense at the same time.'" *Youngs v. Conley*, 505 S.W.3d at 314 (quoting *Grant v. Sears*, 379 S.W.3d at 916). After our review of the record, we cannot saythat the parties ever had a meeting of the minds upon the same terms in the same sense at the same time in this case.[2]

---

[2]McGinnis further argues that the Sticklers continued to proceed as if there was a settlement following the Stickler Offer of September 23, 2020, thereby indicating there was indeed a settlement.

11

The trial court did not err in finding "that these parties never entered into a valid and enforceable settlement agreement." McGinnis' point on appeal is denied.

## Conclusion

The trial court's judgment is affirmed.

_____
W. DOUGLAS THOMSON, JUDGE

All concur.

---

For instance, later, the Sticklers desired to see the proposed release drafted by McGinnis. McGinnis also argues, as we mentioned, *supra*, that he did ultimately comply with the terms of the Stickler Offer by allowing the Sticklers to interview him and providing copies of insurance policies and declaration sheets. These arguments are of no merit. Again, the settlement agreement into which McGinnis argues the parties entered occurred *at the time of the State Farm Response. At that time*, however, the conditions upon which the Sticklers' offer was made had not been fulfilled.